UNITED STATES, Appellee

v.

Travis D. Jones, Specialist
U.S. Army, Appellant

No. 14-0071

Crim. App. No. 20110679

United States Court of Appeals for the Armed Forces

Argued April 9, 2014

Decided July 21, 2014

RYAN, J., delivered the opinion of the Court, in which BAKER, C.J., and ERDMANN, STUCKY, and OHLSON, JJ., joined.

Counsel

For Appellant:  Captain James S. Trieschmann Jr. (argued); Lieutenant Colonel Jonathan F. Potter (on brief); Colonel Kevin Boyle and Major Amy E. Nieman.

For Appellee:  Captain Samuel Gabremariam (argued), Colonel John P. Carrell, Lieutenant Colonel James L. Varley, and Major Robert A. Rodrigues (on brief); Major Catherine L. Brantley.

Amicus Curiae for Appellant:  Reynaldo Martinez (law student) (argued); Eric R. Carpenter, Esq. (supervising attorney) -- for Florida International University College of Law.

Military Judges:  Michael Hargis and Frank Whitney

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge RYAN delivered the opinion of the Court.

Contrary to his pleas, a general court-martial composed of enlisted members convicted Appellant of one specification of conspiracy to commit burglary, in violation of Article 81, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881 (2012), and one specification of burglary, in violation of Article 129, UCMJ, 10 U.S.C. § 929 (2012).  The adjudged sentence provided for confinement for two years and a bad-conduct discharge.  The convening authority approved the adjudged sentence and ordered all but the bad-conduct discharge executed.[1]

The United States Army Court of Criminal Appeals (ACCA) summarily affirmed the findings and sentence as approved by the convening authority.  United States v. Jones, No. ARMY 20110679, slip op. at 1 (A. Ct. Crim. App. July 31, 2013).  We granted Appellant's petition to review the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE DENIED THE DEFENSE'S MOTION TO SUPPRESS APPELLANT'S STATEMENT TO THE MILITARY POLICE.

We hold that in light of all the facts and circumstances of this case, the military judge did not abuse his discretion in admitting Appellant's statement, as Specialist (SPC) John Ellis

---

[1] We heard oral argument in this case at Florida International University College of Law as part of the Court's "Project Outreach."  See United States v. Mahoney, 58 M.J. 346, 347 n.1 (C.A.A.F. 2003).  This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

was not acting in an official law enforcement or disciplinary capacity when he questioned Appellant. As a result, Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012), warnings were not required, and Appellant's statement was properly admitted. The decision of the ACCA is affirmed.

## I. FACTS

In November 2010, and during the time of the events involved in this case, SPC[2] Ellis was an infantryman, who began also serving as a military police (MP) augmentee, attached to the 194th MP Company. Augmentees attached to the 194th MP Company went on patrol with an actual MP and served as "more or less a back up for the MP." Because SPC Ellis was assigned as an augmentee later than other augmentees, he was only given on-the-job training and did not receive the two weeks of training that the others received. As an augmentee, SPC Ellis testified that he was not allowed to perform MP duties without his MP partner present and was instructed that when he was off-duty he was an infantryman and was not authorized to perform any MP functions. Further, SPC Ellis was not allowed to wear an MP brassard and was not authorized to fill out rights waiver forms, take sworn statements, or question suspects.

---

[2] At the time of the events, SPC Ellis was a private first class (PFC) and Appellant was a specialist.

3

In March 2011, about a week and a half prior to the burglary for which Appellant was charged, SPC Elliott Carrasquillo sent SPC Ellis a Facebook chat message reading "Hey, swing by my room. I need to ask you something." SPC Ellis agreed and headed to SPC Carrasquillo's room, which he shared with Appellant. When SPC Ellis entered the room, SPC Carrasquillo and Appellant were sitting on their beds and Appellant told SPC Ellis to lock the door behind him. SPC Carrasquillo then asked SPC Ellis if he would "be interested in accompanying [him] and Jones to help rob this guy of his money?" SPC Ellis testified that he thought SPC Carrasquillo was joking and responded by telling him, "You're crazy. You're out of your mind." SPC Ellis informed them that he wanted nothing to do with the plan and left the room. Appellant and SPC Carrasquillo were both MPs at the time of the events.

While on duty during the morning of April 1, 2011, SPC Ellis and his partner responded to a call regarding an armed robbery. When they arrived at the scene they searched and secured the area. While at the scene, the noncommissioned officer in charge of the Provost Marshal's Office provided SPC Ellis with a description of the suspects. SPC Ellis testified that upon hearing a description of the suspects he assumed that Appellant and SPC Carrasquillo committed the crime. After SPC Ellis's shift ended and he was walking to his containerized

4

housing unit (CHU), he saw Appellant walking in his direction
and said, "Hey, let me ask you a question.  Let's go to my
room."  Appellant agreed and upon entering, Appellant locked the
door, and the following exchange occurred:

SPC Ellis:  "Don't play games with me . . . . Why'd you do
            it?"

Appellant:  "What are you talking about?"

SPC Ellis:  "Jones, don't f'n play games with me."

Appellant:  "All right.  We did it."

SPC Ellis:  "Who is we?"

Appellant:  [No response]

SPC Ellis:  "Where's your roommate, Carrasquillo?"

Appellant:  "I guess, he's in the room."

Appellant then left and SPC Ellis changed out of his
uniform and left his room.  As SPC Ellis walked, he saw SPC
Carrasquillo, who said he wanted to bring him cigars to his
room.  When SPC Carrasquillo entered SPC Ellis's room with the
cigars, SPC Ellis spoke with a serious and stern voice, and said
"Carrasquillo, I don't want to hear your BS.  Tell me why you
did it."  SPC Carrasquillo eventually responded that he did it
because he did not want Appellant to go by himself.  SPC Ellis
then asked who the third participant was and SPC Carrasquillo
told him it was PFC James Backes, an MP augmentee.

SPC Carrasquillo then said that they had about $380,000 from the burglary and explained that to get the money off base he planned to throw the money over "a dark spot along the t-wall" and collect it after he cleared customs.  SPC Carrasquillo would not respond when SPC Ellis asked him about the location of the money.  As SPC Carrasquillo left the room, he said to SPC Ellis, "Don't say anything to anybody."

About a minute after SPC Carrasquillo left, SPC Ellis went next door to the room of Sergeant (SGT) Goodrich, his section leader, and explained to him what he had just been told.  On April 3, 2011, SPC Ellis made a sworn statement about the encounters.  Investigators treated SPC Ellis as a registered source after he independently questioned Appellant.

On July 13, 2011, the defense counsel moved to suppress the statement that SPC Ellis elicited from SPC Jones on April 1, 2011, as well as any fruits from the conversation, because SPC Ellis failed to give Appellant Article 31(b), UCMJ, warnings. The Government responded in opposition to the motion and argued that SPC Ellis was not required to give Article 31(b), UCMJ, warnings because (1) SPC Ellis was not acting in an official capacity, and (2) SPC Ellis did not coerce Appellant.

The military judge found that the evidence "indicate[d] that SPC Ellis was not acting in any official capacity" because he was not an MP soldier, Appellant knew him personally and

previously asked SPC Ellis to participate in the burglary, and there was a "a total void of certain evidence concerning SPC Ellis's rank, duty, or other relationship that might tend to show subtle pressure on [Appellant] to respond to an inquiry." Further, the military judge found that "[t]he evidence also indicate[d] the uncoerced nature of the informal exchange between SPC Ellis and [Appellant]" because Appellant voluntarily went to SPC Ellis's room, where Appellant locked the door, and because Appellant had previously solicited SPC Ellis to participate in the crime. For those reasons, the military judge denied the motion.

At trial, after SPC Ellis testified about the events, the defense asked the military judge to reconsider his prior order on the motion to suppress Appellant's statement based on "the fact that [SPC Ellis] was present [the night of the burglary] as a first responder." The military judge stated that based on "all the facts and circumstances at the time of the interview" it could not be determined that "the military questioner was acting or could be reasonably considered to be acting in an official law enforcement or disciplinary capacity." Consequently, the military judge denied the motion to reconsider.

## II.  ACCA DECISION

The ACCA summarily affirmed the findings and sentence.

## III.  DISCUSSION

"We review a military judge's ruling on a motion to suppress . . . for an abuse of discretion." United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995).  "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion." United States v. McElhaney, 54 M.J. 120, 130 (C.A.A.F. 2000).  "When there is a motion to suppress a statement on the ground that rights' warnings were not given, we review the military judge's findings of fact on a clearly-erroneous standard, and we review conclusions of law de novo." United States v. Swift, 53 M.J. 439, 446 (C.A.A.F. 2000).  "[O]n a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." Ayala, 43 M.J. at 298.

"Because of the effect of superior rank or official position upon one subject to military law, the mere asking of a question under certain circumstances is the equivalent of a command." United States v. Duga, 10 M.J. 206, 209 (C.M.A. 1981).  Congress passed Article 31(b) "to provide servicepersons with a protection which, at the time of the Uniform Code's enactment, was almost unknown in American courts, but which was

deemed necessary because of subtle pressures which existed in military society."  Id.  "The Article 31(b) warning requirement provides members of the armed forces with statutory assurance that the standard military requirement for a full and complete response to a superior's inquiry does not apply in a situation when the privilege against self-incrimination may be invoked." Swift, 53 M.J. at 445.  Under Article 31(b), UCMJ:

> No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

Thus, Article 31(b), UCMJ, warnings are required when (1) a person subject to the UCMJ,[3] (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected.  United States v. Cohen, 63 M.J. 45, 49 (C.A.A.F. 2006).[4]

---

[3] This has been interpreted to include "a knowing agent," such as a civilian law enforcement agent working for military criminal investigatory services.  See Military Rule of Evidence (M.R.E.) 305(b)(1); see also Unites States v. Quillen, 27 M.J. 312, 314 (C.M.A. 1988).

[4] Because it is clear that SPC Ellis was subject to the UCMJ, suspected Appellant of the crime, and the statement he elicited pertained to the offense for which Appellant was suspected, the only question remaining in this case is whether SPC Ellis interrogated or requested any statement from Appellant.

Although Article 31(b), UCMJ, seems straightforward, "were these textual predicates applied literally, Article 31(b) would potentially have a comprehensive and unintended reach into all aspects of military life and mission." Cohen, 63 M.J. at 49 (discussing United States v. Gibson, 3 C.M.A. 746, 14 C.M.R. 164 (1954)). Because the mandatory exclusion of statements taken in violation of Article 31, UCMJ, is a severe remedy, this Court has interpreted "the second textual predicates -- interrogation and the taking of 'any' statement -- in context, and in a manner consistent with Congress' intent that the article protect the constitutional right against self-incrimination." Id. Under Article 31(b)'s second requirement, rights warnings are required if "the person conducting the questioning is participating in an official law enforcement or disciplinary investigation or inquiry," Swift, 53 M.J. at 446, as opposed to having a personal motivation for the inquiry. See United States v. Price, 44 M.J. 430, 432 (C.A.A.F. 1996). This "is determined by 'assessing all the facts and circumstances at the time of the interview to determine whether the military questioner was acting or could reasonably be considered to be acting in an official law-enforcement or disciplinary capacity.'" Cohen, 63 M.J. at 50 (quoting Swift, 53 M.J. at 446) (internal quotation

marks omitted).[5]  Whether the questioner was acting or could

reasonably be considered to be acting in either capacity is a

question of law, which we review de novo.  See Swift, 53 M.J. at

448; United States v. Good, 32 M.J. 105, 108 (C.M.A. 1991).

Duga purported to set forth a two-part test, which required

Article 31, UCMJ, warnings only where the person questioning was

acting in an official capacity and "the person questioned

perceived that the inquiry involved more than a casual

conversation."  10 M.J. at 210.  We now expressly reject the

second, subjective, prong of that test, which has been eroded by

---

[5] This objective standard on its face is potentially problematic
in relation to the use of undercover officers or informants who
clearly act in an official capacity.  While the facts of this
case do not raise that issue, M.R.E. 305's Drafter's Analysis
notes that Article 31(b), UCMJ, does not affect decisions such
as United States v. French, 25 C.M.R. 851 (A.F.B.R. 1958), which
involved undercover agents.  Manual for Courts-Martial, United
States, Analysis of the Military Rules of Evidence app. 22 at
A22-14 (2008 ed.); see also United States v. Ruiz, 54 M.J. 138,
140 n.2 (C.A.A.F. 2000) (noting that the actions of an
undercover agent are "not within the scope of the warning
requirement in Article 31(b)[, UCMJ]").  "Judicial discretion
indicates a necessity for denying [Article 31(b)'s] application
to a situation not considered by its framers, and wholly
unrelated to the reasons for its creation."  Gibson, 3 C.M.A. at
752, 14 C.M.R. at 170.  Because undercover officials and
informants do not usually place the accused in a position where
a reasonable person in the accused's position would feel
compelled to reply to questions, this same logic dictates that
Article 31(b), UCMJ, would not apply in those situations.  Id.
This conclusion is consistent with the Supreme Court's
undercover agent exception in the Miranda context.  Illinois v.
Perkins, 496 U.S. 292, 296 (1990) ("Conversations between
suspects and undercover agents do not implicate the concerns
underlying Miranda.  The essential ingredients of a 'police-
dominated atmosphere' and compulsion are not present . . . .").

more recent cases articulating an objective test.  <u>See, e.g.</u>,

<u>Swift</u>, 53 M.J. at 446; <u>Good</u>, 32 M.J. at 108.

Here, the military judge's findings of fact are supported

by the record and are not clearly erroneous.  In the context of

the issue raised in this case then, whether SPC Ellis

interrogated or requested any statement from Appellant

triggering Article 31(b), UCMJ, "is determined by 'assessing all

the facts and circumstances at the time of the interview to

determine whether the military questioner was acting or could

reasonably be considered to be acting in an official law-

enforcement or disciplinary capacity.'"  <u>Cohen</u>, 63 M.J. at 50

(quoting <u>Swift</u>, 53 M.J. at 446) (internal quotation marks

omitted).  The second determination is judged by reference to

"'a reasonable man in the suspect's position.'"  <u>Good</u>, 32 M.J.

at 108 n.2.  The military judge concluded that SPC Ellis was not

acting, and could not reasonably be considered by Appellant to

be acting, in an official law enforcement or disciplinary

capacity.  The military judge applied the correct law, and, on

balance, did not abuse his discretion under the circumstances of

this case.

Whether SPC Ellis was acting in an official law enforcement

capacity requires determining the scope of his authority as an

agent of the military.  <u>See Cohen</u>, 63 M.J. at 51 (considering

the questioner's "authorities and responsibilities as

12

specified"); Price, 44 M.J. at 432 (agreeing with the finding that the questioner "went beyond what he was asked to do by the law enforcement officials"). Appellant argues that because SPC Ellis was involved in the investigation, his questioning was part of his official law enforcement duties. While it is true that SPC Ellis searched and secured the scene of the crime, the question is whether that is enough to compel the conclusion that he acted in an official law enforcement capacity when he later asked Appellant questions. While SPC Ellis's involvement in the investigation and the immediate reporting of his conversations to his chain of command are the strongest facts in Appellant's favor, it was not error to give greater weight to other facts, which favor the Government.

The military judge found that SPC Ellis had a personal motivation for questioning Appellant that was outside the scope of "his modest law enforcement responsibilities." Further, it was apparent that Ellis, based on both his grade and billet, did not possess or exercise a disciplinary role with respect to Appellant. On the one hand, SPC Ellis suspected that Appellant committed the burglary based on their prior interaction and wanted to investigate the crime. However, on the other hand, SPC Ellis served as only an MP augmentee, and was aware of the limited law enforcement authority and responsibilities that he possessed. SPC Ellis received only on-the-job, and not formal,

13

training.  SPC Ellis was not permitted to perform MP duties
without his MP partner present or any MP functions when he was
off-duty.  SPC Ellis was not authorized to fill out rights
waiver forms, take sworn statements, or question suspects.
Additionally, the military police treated SPC Ellis as a
registered source after he independently questioned Appellant,[6]
which signified that, in the view of the Government at the time,
he was not acting under the guise of his official MP augmentee
duties when he questioned Appellant.  Coupled with the facts
that the questioning occurred outside the presence of his MP
partner and while SPC Ellis was off-duty, it was not error to
conclude that the questioning was not in an official law
enforcement or disciplinary capacity.

Further, a reasonable person in Appellant's position could
not consider SPC Ellis to be acting in an official law
enforcement or disciplinary capacity.  Here, both Appellant and
SPC Carrasquillo were actual MPs, who, based on their work with
MP augmentees, seemingly understood the limited authorities and
responsibilities of that position.  Moreover, at the time of the

---

[6] CID Regulation 195-1 defines "registered source" as "[a]n
individual recruited, targeted and/or controlled by a special
agent to confidentially gather intelligence information for CID
personnel.  Registered sources are always considered agents of
the government and their identity will be protected."  Dep't of
the Army, Criminal Investigation Command, CID Reg. 195-1,
Criminal Investigation Operational Procedures § II (Mar. 20,
2010); see also United States v. Bell, 38 M.J. 358, 362 n.4
(C.M.A. 1993).

questioning, SPC Ellis (then PFC Ellis) was junior in rank to Appellant.  Finally, Appellant had asked SPC Ellis to join them in committing the burglary -- in effect to be their partner in crime -- and it was Appellant, not SPC Ellis, who locked the door during the questioning.  On balance, a suspect in Appellant's position could not reasonably consider SPC Ellis to be acting in an official law enforcement or disciplinary capacity when he questioned him about the burglary.

In light of these facts and circumstances, the military judge did not err in concluding that SPC Ellis was not acting in an official law enforcement capacity and did not abuse his discretion in admitting Appellant's statement.

## IV.  DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.