UNITED STATES, Appellant/Cross-Appellee

v.

Aaron M. BUFORD, Senior Airman
U.S. Air Force, Appellee/Cross-Appellant

No. 14-6010

Crim. App. No. 2013-26

United States Court of Appeals for the Armed Forces

Argued December 9, 2014

Decided March 24, 2015

OHLSON, J., delivered the opinion of the Court, in which BAKER, C.J., and RYAN, J., joined. ERDMANN, J., filed a separate dissenting opinion, in which STUCKY, J., joined.

Counsel

For Appellant/Cross-Appellee: Captain Thomas J. Alford (argued); Colonel Don Christensen and Gerald R. Bruce, Esq.

For Appellee/Cross-Appellant: Captain Christopher D. James (argued).

Military Judge: Lynn Schmidt

**This opinion is subject to revision before final publication.**

United States v. Buford, No. 14-6010/AF

Judge OHLSON delivered the opinion of the Court.

This case arises out of an interlocutory appeal under Article 62, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 862 (2012), in a pending court-martial.

Appellee/Cross-Appellant (Appellee) was charged with a single specification alleging indecent conduct under Article 120, UCMJ, 10 U.S.C. § 920 (2012), and six specifications variously alleging possessing, accessing, receiving, and distributing child pornography under Article 134, UCMJ, 10 U.S.C. § 934 (2012). These specifications were referred to trial by general court-martial. Defense counsel subsequently filed a motion to suppress evidence found on two laptop computers and a flash drive, as well as related derivative evidence. Upon conducting a motions hearing, the military judge found that an individual who was involved in the initial viewing and collecting of evidence in this matter was acting as an agent of the Government, held that the actions of this individual violated Appellee's reasonable expectation of privacy under the Fourth Amendment, and suppressed the evidence.

After the military judge denied a request for reconsideration, the Government appealed her decision to the United States Air Force Court of Criminal Appeals (CCA). United States v. Buford, Misc. Dkt. No. 2013-26, 2014 CCA LEXIS 226, 2014 WL 2039102 (A.F. Ct. Crim. App. Apr. 4, 2014)

United States v. Buford, No. 14-6010/AF

(unpublished).  The CCA denied in part and granted in part the Government's appeal, agreeing with the military judge that the individual involved in the initial stages of the case was acting as an agent of the Government and that evidence from one of the laptops should consequently be suppressed, but overturning the military judge's decision to suppress the evidence from the other laptop and from the flash drive.  2014 CCA LEXIS 226, at *19-20, 2014 WL 2039102, at *6.  Following the CCA's denial of the Government's request for en banc reconsideration, the Judge Advocate General of the Air Force certified the case to this Court.  The issue before us is whether the military judge abused her discretion when she suppressed the evidence.

Based on the analysis provided below, we hold that the military judge erred when she found that the individual involved in the initial viewing and collecting of evidence in this matter was acting as an agent of the Government.  We further hold that she abused her discretion when she used this erroneous conclusion of law as the basis for suppressing the evidence from the two laptop computers and flash drive.  The CCA likewise erred in proceeding from the same erroneous legal conclusion.  Accordingly, we summarily reverse the decision of the CCA and the rulings of the military judge.

BACKGROUND

In March 2012, Appellee's wife, AB, discovered a "fake" Facebook account associated with Appellee's e-mail address. This Facebook account appeared to have been created and maintained by Appellee, but the photo and name on the account were not Appellee's. Two months later, in May 2012, following an argument with Appellee, AB went to the home of a friend, accessed this fake Facebook account on her Dell laptop computer, and showed the friend some of the contents of the account, which included sexually explicit images and messages.

At the time this incident occurred, Airman First Class (A1C) Ryan Marlow also was at the home of AB's friend. Marlow was off duty and helping the friend's husband repair a lawnmower. Marlow was an E-3 Security Forces airman who generally engaged in gate security and patrol duty, and he had no training as a criminal investigator. Knowing that Marlow was a Security Forces member, the distraught AB asked him to look at the fake Facebook page on her Dell laptop. Marlow explored the site and then entered Appellee's e-mail account using a password provided by AB. He next created "screen shots" of sexually explicit images and messages on these sites which appeared to involve underage females. Although Marlow encouraged AB to report this matter to criminal investigators, he told her that

4

it was "up to her" to decide what to do and that it was "her decision."

AB decided to report the matter, and Marlow escorted her to the Security Forces office. An investigation was initiated and AB consented to the search of her Dell laptop and provided investigators with a written statement. The investigators found what appeared to be child pornography on the laptop and obtained a search authorization for Appellee's residence. There they seized, among other items, an HP laptop belonging to Appellee. Several weeks later, AB discovered in her residence a flash drive that apparently belonged to Appellee. The flash drive was not password protected and Marlow examined its contents and determined that it contained sexually explicit images of what appeared to be underage females. The flash drive was then turned over to investigators. Forensic imaging and analysis later disclosed that child pornography was present on the Dell laptop, the HP laptop, and the flash drive.

Following a motions hearing, the military judge suppressed all of the images and chat logs found on AB's Dell laptop, Appellee's HP laptop, and Appellee's flash drive. She likewise suppressed all derivative evidence from these items. The military judge based her ruling on Fourth Amendment grounds, finding that Marlow was acting as an agent of the Government when he viewed and collected evidence from Appellee's Facebook

5

account, e-mail account, and flash drive without a warrant or Appellee's authorization, and that Marlow thereby violated Appellee's reasonable expectation of privacy. We are now presented with the issue of whether the military judge abused her discretion in suppressing this evidence.

## STANDARD OF REVIEW

In an Article 62, UCMJ, appeal, this Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed below. United States v. Baker, 70 M.J. 283, 287-88 (C.A.A.F. 2011). In this case, the prevailing party was Appellee. Further, "'[i]n reviewing a military judge's ruling on a motion to suppress, we review factfinding under the clearly-erroneous standard and conclusions of law under the de novo standard.'" Id. at 287 (quoting United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995)). When an appeal presents a mixed question of law and fact, as this one does, this Court will find that a military judge abused her discretion if her "findings of fact are clearly erroneous or [her] conclusions of law are incorrect." Ayala, 43 M.J. at 298. A finding by this Court that a military judge abused her discretion requires "'more than a mere difference of opinion.'" United States v. Lloyd, 69 M.J. 95, 99 (C.A.A.F. 2010) (quoting United States v. McElhaney, 54 M.J. 120, 130 (C.A.A.F. 2000)).

6

ANALYSIS

As the Supreme Court held in United States v. Jacobsen, 466 U.S. 109 (1984), the protections provided by the Fourth Amendment do not apply to "'a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" Id. at 113-14 (quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)). Thus, the threshold question in the instant case is whether A1C Marlow was acting as "an agent of the Government" at the time he viewed and collected evidence in this case. This Court's recent and unanimous decision in United States v. Jones, 73 M.J. 357 (C.A.A.F. 2014), is instructive on this point.

Although the Jones opinion was decided in a different context,[1] its central tenets are applicable here. Namely, the fact that an individual is affiliated with a law enforcement organization is not, standing alone, determinative of the issue of whether that individual was acting as an agent of the government in any particular case. Rather, it is necessary to

---

[1] In Jones, the accused was questioned about a robbery by a military police (MP) augmentee who also was an acquaintance of the accused. 73 M.J. at 359. The issue before the Court was whether the accused's incriminating statements to the MP augmentee were admissible at trial despite the fact that the accused had not been read his rights pursuant to Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012). Id. at 360.

examine "<u>all</u> the facts and circumstances" in a case when "determining [an individual's] authority as an agent of the [Government]." <u>Id.</u> at 358, 362 (emphasis added).

Accordingly, although we certainly give some weight to the fact that Marlow served as a member of the Security Forces, our analysis does not stop there. Instead, we also note that there is abundant additional evidence in the record that demonstrates that Marlow was <u>not</u> acting on behalf of the Security Forces -- and was not acting in any other capacity as an agent of the Government -- when he assisted AB with examining Appellee's Facebook page and e-mail account and making screenshots of relevant portions thereof. Specifically, we note the following points:

First, Marlow was off duty fixing a lawnmower at a friend's house at the time AB enlisted his aid in this matter.

Second, Marlow was not a criminal investigator. He was an E-3 who served essentially as a "gate guard" who also had some vehicle patrol responsibilities. The Government had never provided him with training to be an investigator, nor had the Government ever used him as an investigator. Further, the Government had not provided him with any computer training that he used in this case.

Third, the Government had no prior knowledge that Marlow was involved in examining Appellee's Facebook page or e-mail

account or taking screenshots of them, and there was no participation in, or approval of, these activities by duly authorized agents of the Government.

Fourth, although Marlow's actions of exploring Appellee's Facebook page, examining Appellee's e-mail account with a password provided by AB, and taking screenshots of relevant portions thereof could be characterized as investigatory in nature, these acts could also be characterized as little more than the type of steps that a curious, tech-savvy individual might take at the behest of a distraught friend in an effort to assist her.

Fifth, once Marlow loaded the incriminating screenshots onto a flash drive, he gave the flash drive to AB. He then said it was "up to her" to decide what to do with the information and that it was "her decision" whether to report the matter to appropriate authorities. This laissez-faire approach to a matter where there was strong evidence of criminal conduct is hardly the hallmark of someone who was acting as an agent of the Government.

Sixth, the record shows that once investigators learned of this matter, they took steps to exclude Marlow from any further involvement in the case. In fact, the record shows that investigators initially pondered whether Marlow had "planted" the evidence against Appellee because of a possible personal

interest in AB, and they ordered him to discontinue his involvement in the matter. Indeed, Marlow's continued unwanted interest in the case ultimately culminated in a no-contact order with either AB or Appellee in the July/August time frame.

Seventh, upon review of the rest of the record, we have discovered no other "'clear indices of the Government's encouragement, endorsement, and participation' in the challenged search." United States v. Daniels, 60 M.J. 69, 71 (C.A.A.F. 2004) (quoting Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 615-16 (1989)).

Eighth, although AB sought Marlow's involvement in this matter knowing that he was a member of the Security Forces, and although he may have wished to demonstrate some investigative prowess to his assembled friends, "the question of whether a private actor performed as a government agent does not hinge on motivation." Id. Thus, the military judge erred when she applied a subjective test and relied on Marlow's expectations and motivations when making her determination, rather than applying an objective test and weighing the totality of the circumstances in determining whether Marlow was acting as a government agent. Id.

Therefore, although we have viewed the evidence in the light most favorable to Appellee, upon analyzing and weighing all of the points cited above and making a de novo determination

of this matter, we conclude that although Marlow was a member of the Security Forces, he was not acting as an agent of the Government during all relevant times in the instant case. Therefore, we find that the military judge erred when she reached a legal determination to the contrary.  We further find that her order suppressing the evidence of the Dell laptop, the HP laptop, and the flash drive on that basis constituted an abuse of discretion.

This Court's review of the issues presented in this Article 62, UCMJ, appeal is now complete.  However, the military judge retains full authority to further rule on the admissibility of the evidence in this case on other grounds not addressed in this opinion.  Specifically, the military judge may now consider other evidentiary principles and jurisprudence, such as this Court's recent decision in United States v. Wicks, 73 M.J. 93 (C.A.A.F. 2014), in deciding whether to admit at trial the Dell laptop, the HP laptop, and the flash drive, as well as all derivative evidence.

CONCLUSION

Accordingly, upon de novo review, we conclude that the military judge erred and abused her discretion in determining that the evidence gathering in this case was a government search within the meaning of the Fourth Amendment, and likewise erred in applying the exclusionary rule on that basis.  The CCA erred

in proceeding from that same premise.  The record of trial in this case is returned to the Judge Advocate General of the Air Force for further proceedings consistent with this opinion.

<u>United States v. Buford</u>, No. 14-6010/AF

ERDMANN, Judge, with whom STUCKY, Judge, joins (dissenting):

This case calls on us to review a military judge's decision to suppress evidence, which the military judge held was seized in violation of the Fourth Amendment guarantee against unreasonable searches and seizures. Following a hearing on the motion to suppress, the military judge concluded: the government has not proven by a "preponderance of evidence that the items seized and ultimately searched (the Dell Laptop, the HP Laptop and the Centon thumb drive) were done so in accordance with the Fourth Amendment and the MREs." As I view this case turning on the government's initial burden of proof in responding to a motion to suppress and the standard of review we are required to apply to that decision, I respectfully dissent from the majority opinion.

Background

While visiting a friend's house, Senior Airman Buford's wife, AB, became distraught as she looked at a "fake" Facebook account that was associated with her husband's e-mail. Airman First Class RM, a member of Security Forces, was also visiting at the house and was asked by AB to take a look at the Facebook page because she knew he was a "cop."

When RM began looking at the Facebook page his initial instinct was that it might contain evidence that Buford was

cheating on his wife.  He was aware at the time that adultery was a Uniform Code of Military Justice (UCMJ) offense and he agreed that his "cop" training kicked in and he began to gather evidence.  RM looked at multiple conversations on the Facebook page.  He then searched the messages folder of the Facebook page and found pictures of male genitalia as well as sexually explicit communications.  RM began to take screen shots because he "knew it could possible [sic] go some more places than just cheating.  And just in case that Facebook account was deleted or something of the sort that we would have screenshots for proof."

RM then asked AB to access the e-mail account used to create the Facebook page.  AB signed into her husband's e-mail account and RM specifically searched for messages with photo attachments. He found pictures of what appeared to be underage nude females. He took screenshots of the pictures because "there was something a lot more than cheating and that because of the appearance of the females looking under age [sic] that it should be taken to investigations."

RM placed the screenshots on a USB flash drive and gave the flash drive to AB.  RM then encouraged AB to take the evidence to Security Forces investigations and, when she agreed, he drove her there that night.  Security Forces then contacted the Air Force Office of Special Investigations (OSI).

The next day, RM drove AB to OSI where she signed a consent to search her Dell laptop, a flash drive, and 1 GB memory card. The OSI searched AB's house later that day.  During the search RM acted as a conduit between AB and the OSI.  RM was told by the OSI to discontinue his involvement in the investigation. However, RM testified that at the same time he was also told "if I did find something or something was brought to my attention, to give them a call immediately and turn it into them and don't do anything myself."

Later, AB and a friend approached RM with a Centon flash drive they had found in the back of the TV entertainment center at the Buford's residence.  RM testified that he wasn't sure whether it was AB or her friend who actually gave him the flash drive.  RM opened the flash drive on his personal laptop because he wanted to ensure there was evidence on it.  The drive contained pornography that RM believed included images of underage females.  RM then called the OSI and after informing them of the flash drive, he was directed to turn the drive over to them, which he did the next day.

Standard of Review:

As the military judge correctly identified, when responding to a motion to suppress evidence, the government has the "burden of proving by a preponderance of the evidence that the evidence was not obtained as a result of an unlawful search or seizure."

3

Military Rule of Evidence 311(e)(1). We review that ruling for an abuse of discretion. United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995). I agree with the majority that "[w]hen an appeal presents a mixed question of law and fact, as this one does, this Court will find that a military judge abused her discretion if her 'findings of fact are clearly erroneous or [her] conclusions of law are incorrect.'" United States v. Buford, __ M.J. __, __ (6) (C.A.A.F. 2015) (quoting United States v. Ayala, 43 M.J. 296, 298 (C.A.A.F. 1995)) (second set of brackets in original). "The abuse of discretion standard calls for more than a mere difference of opinion. The challenged action must be arbitrary[,] clearly unreasonable, or clearly erroneous." United States v. Wicks, 73 M.J. 93, 98 (C.A.A.F. 2014) (citations omitted) (internal quotations omitted). As we are reviewing this matter in an interlocutory Article 62, UCMJ, 10 U.S.C. § 862 (2012), appeal, we view the evidence in the light most favorable to the prevailing party at trial. United States v. Baker, 70 M.J. 283, 287–88 (C.A.A.F. 2011).

## Discussion

I have no quarrel with the facts relied upon in the majority opinion. However those facts, while supporting the majority's position, do not reflect the totality of the testimony heard by the military judge, much of which was conflicting. The military

4

judge's opinions reflect that she considered these conflicts and

reached her factual findings after considering all of the

evidence.[1]  For instance, the military judge found that:

> Throughout the time [RM] acted, in his words, "as a
> conduit" between [AB] and OSI, although he stated he
> was not acting in an official capacity, his testimony
> leads the court to believe otherwise.  He stated "[AB]
> asked him to look at the laptop because he was a cop;
> that he began searching for and collecting evidence;
> that he didn't want evidence to get lost; that he was
> going off his instincts as a SFS member; that he
> searched the messages section because he knew that's
> where people hide stuff; that once he saw the names
> associated with the pictures, he became more curious."
> At no time up to this moment, had [RM], then an active
> duty SFS member, sought search authorization or even
> requested search authorization.  He further relayed to
> the Court that "he encouraged [AB] to go to
> investigations and that he felt responsible until the
> laptop was turned over to SFOI and then OSI."
>
> . . . .
>
> Based on the foregoing, this Court finds that [RM],
> then an active duty Security Forces member with some,
> all be it not nearly as extensive as an OSI agent,
> training in conducting investigations, was acting as
> an agent for Government at the time he searched the
> Dell laptop and saved the evidence to a thumb drive.
> His actions went far and beyond those expected of a
> private citizen.

The military judge set forth her legal conclusion on this issue

in her ruling on the government's motion for reconsideration:

> In U.S. Volante, 16 C.M.R 263, 266, the Court of
> Military Review found in 1954 that:  "Plainly, not
> every search made by persons in the military service
> is under the authority of the United States.  However,

---

[1] The military judge issued a seven-page opinion on October 5,
2013, and a five-page opinion on October 7, 2013.

> we need not attempt to establish categories of persons or situations which will make the search either official or private.  <u>Certainly, a search by a person duly assigned to law enforcement duty and made for the sole purpose of enforcing military law</u>, is conducted by a person acting under the authority of the United States."

Emphasis in original.

Since <u>Volante</u> was decided, we have focused more on whether the government authorized or participated in the search, but we have not modified or overruled the holding in <u>Volante</u>.  In <u>United States v. Daniels</u>, 60 M.J. 69, 71 (C.A.A.F. 2004) we specifically examined the issue of private actors/government agents in the context of Fourth Amendment searches:

> Moreover, the question of whether a private actor performed as a government agent does not hinge on motivation, but rather "on the degree of the Government's participation in the private party's activities, a question that can only be resolved 'in light of all the circumstances.'"  <u>Skinner v. Railway Labor Executives' Ass'n</u>, 489 U.S. 602, 614-15, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989) (internal citations omitted).  To implicate the Fourth Amendment in this respect there must be "clear indices of the Government's encouragement, endorsement, and participation" in the challenged search.  <u>Id.</u> at 615-16.

While the identity and motivation of the individual conducting the search is not determinative on its own as to the status of a private actor, it is a circumstance that must be considered "in light of all circumstances."

In this case, it is clear that the government did not direct RM to conduct the initial searches.  It is also clear that while

the government told RM to stop his involvement in the investigation, at the same time the government told him: "if I did find something or something was brought to my attention, to give them a call immediately and turn it into them and don't do anything myself." RM was later given the Centon flash drive and after searching the drive for evidence, he contacted the OSI as he had been directed to do and turned the drive over to them.

The question then becomes whether this later involvement by the government, in combination with all other circumstances of the search, is sufficient to constitute a government search for Fourth Amendment purposes. This area was addressed in United States v. Knoll, 16 F.3d 1313, 1320 (2d Cir. 1994):

> The Supreme Court acknowledged in Lustig v. United States that "a search is a search by a federal official if he had a hand in it" and that "so long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it." 338 U.S. 74, 78-79 (1949) (plurality opinion). Lustig makes clear that it is "immaterial" whether the government originated the idea for a search or joined it while it was in progress. Id. at 79. The government may become a party to a search through nothing more than tacit approval. See 1 Wayne R. LaFave, Search & Seizure § 1.8(b), at 180 (2d ed. 1987).

See also United States v. Coronna, 420 F.2d 1091, 1093 (5th Cir. 1970); United States v. Searp, 586 F.2d 1117, 1120 (6th Cir. 1978); United States v. Payne, 429 F.2d 169, 170 (9th Cir. 1970); United States v. Souza, 223 F.3d 1197, 1202 (10th Cir. 2000); Skinner, 489 U.S. at 615, 109 (finding the "[g]overnment

did more than adopt a passive position toward the underlying private conduct").

The OSI told RM that if he received additional evidence, he should turn it over to them. He was not told that if anyone approached him with additional evidence he should direct that individual to the OSI. The OSI's investigation in Buford's activities was an ongoing effort when RM received the Centon flash drive and turned it over to them, as the drive was the basis for one of the charges against Buford. The purpose of the OSI's seizure -- to obtain incriminating evidence against Buford -- had not yet been completely accomplished. Where the government had accepted the initial evidence seized by RM, their later direction to him to turn over any further evidence he might obtain, which he did, reflects sufficient government involvement to render the search a governmental search.

Given the initial burden of proof on the government, reviewing the evidence in the light most favorable to Buford, and applying our abuse of discretion standard to this mixed question of law and fact, I conclude that the military judge did not abuse her discretion in finding that RM was acting as a government agent. I would therefore affirm the military judge's ruling to suppress the evidence.[2]

---

[2] While the military judge held that AB gave RM consent to search her Dell laptop when she first asked him to look at the

8

United States v. Buford, No. 14-6010/AF

While in Article 62, UCMJ, appeals we review the military judge's decision directly, one of the CCA's holdings deserves comment. The military judge held that the Centon flash drive should be suppressed as RM was acting as a government agent and the government had not otherwise established that it would be admissible. The CCA reversed this determination. The CCA found that the Centon flash drive was given to RM by AB and although the drive was used exclusively by Buford, it was not password protected and was found in a common area of the house. The CCA held that AB therefore had common control over the drive. However, the CCA's factual finding that the flash drive was given to RM by AB is in conflict with a factual finding made by the military judge that it was impossible to determine whether the drive was given to RM by AB (who may have had common control) or by her friend (who had no claim to common control).

---

computer, she also held that the consent did not extend to the Facebook profile or Buford's e-mail account. Although the military judge did not discuss the admissibility of evidence found on the Dell laptop hard drive, it appears she did not intend for that evidence to be suppressed. That is the same conclusion reached by the CCA:

> We concur with the military judge's determination on the issue of consent. AB gave consent to the search of the Dell laptop and had both actual and apparent authority over that laptop. Nevertheless, we also agree that consent to the search of the Dell laptop did not extend to the Facebook and e-mail accounts of the appellee.

United States v. Buford, Misc. Dkt. No. 2013-26, slip op. at 6 (A.F. Ct. Crim. App. Apr. 4, 2014).

United States v. Buford, No. 14-6010/AF

The CCA cannot make findings of fact in direct conflict with a factual finding of the military judge without holding that the military judge's finding was clearly erroneous. United States v. Czachorowski, 66 M.J. 432, 434 (C.A.A.F. 2008) ("findings of fact are affirmed unless they are clearly erroneous"); United States v. Martin, 56 M.J. 97, 106 (C.A.A.F. 2001) ("[F]indings of fact made by the trial judge shall not be set aside unless clearly erroneous." (quoting Main v. Taylor, 477 U.S. 131, 145 (1986)) (internal quotation marks omitted)). Here the military judge's finding was fairly supported by the record. Given the government's burden of proof, taking the evidence in the light most favorable to Buford, the military judge did not abuse her discretion in suppressing the flash drive and the CCA's factual findings and conclusion of law to the contrary was in error. See Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").