# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

**No. 201700197**

———————————

**UNITED STATES OF AMERICA**
*Appellee*

v.

**Julian A. COX**
Private First Class (E-2), U.S. Marine Corps
*Appellant*

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Forrest W. Hoover, USMC.

For Appellant: Lieutenant Daniel E. Rosinski, JAGC, USN.
For Appellee: Colonel Valerie C. Danyluk, USMC;
Lieutenant Kurt W. Siegal, JAGC, USN.

———————————

Decided 1 November 2018

———————————

Before FULTON, CRISFIELD, and HITESMAN,
*Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

FULTON, Senior Judge:

A military judge sitting as a special court-martial convicted the appellant, contrary to her plea, of one specification of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2012). The military judge sentenced the appellant to sixty days' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed.

The appellant raises three assignments of error:

    I.  The appellant's statements to her recovery care coordinator were not admissible because the recovery care coordinator failed to advise the appellant of her rights under Article 31, UCMJ;

    II.  The appellant received ineffective assistance of counsel because they did not object before pleas to statements admitted into evidence and because they did not investigate or offer evidence of the appellant's post-traumatic stress disorder (PTSD); and

    III.  A sentence that includes a bad-conduct discharge is inappropriately severe.

After careful consideration of the record of trial and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact. Art. 66(c), UCMJ, 10 U.S.C. § 866(c).

## I. BACKGROUND

In July 2016, the appellant was a private first class in the Marine Corps assigned to Wounded Warrior Battalion-East at Camp Lejeune, North Carolina. Two days after the appellant attended an off-base party at which cocaine was present and she suffered a medical emergency, the appellant participated in a unit wide urinalysis. The urine sample she provided during the urinalysis tested positive for cocaine. At the time of the urinalysis, the appellant suffered from PTSD as a result of being sexually assaulted, as well as other injuries not related to her sexual assault.

After learning she was to participate in the urinalysis from her staff sergeant, the appellant did not immediately comply with the staff sergeant's direction that she report to the urinalysis testing site to provide a sample. Although she did ultimately participate in the urinalysis, the appellant did not do so until her staff sergeant retrieved her from her barracks room and escorted her to the urinalysis testing site.

While assigned to Wounded Warrior Battalion, Marines must regularly meet with their assigned recovery care coordinator (RCC). The RCC serves as a non-medical case manager and assists participating Marines in their transition back into useful military service or through the medical retirement or separation process. The RCC meets with the battalion leadership in a multidisciplinary team (MDT) meeting to discuss the service members under their care. According to testimony, the primary focus of MDT meetings is on each Marine's medical care, but the participants also address a member's administrative or legal issues should any arise. During an MDT meeting, the appel-

2

lant's commanding officer told the appellant's RCC about the appellant's positive test for cocaine.

The appellant's RCC was JY, a civilian contractor and a retired Marine Corps gunnery sergeant. In a meeting between the appellant and JY, the appellant informed JY that she had just returned from the Naval Criminal Investigative Service (NCIS). When asked by JY why she had been at NCIS, the appellant stated she had tested positive for cocaine. JY asked the appellant how she might have tested positive for cocaine. The appellant responded that she had been at a party at which cocaine had been present, and gave three possible reasons why she might have tested positive for cocaine. First, she might have touched something with cocaine on it, and the cocaine was absorbed through her skin; second, someone put cocaine in her food or drink without her knowing it; and third, that her prescribed lidocaine patch could have caused her positive result. JY did not notify the appellant of her Article 31, UCMJ, rights before the appellant made these statements. At the following week's MDT meeting, JY related the appellant's statements to the appellant's command leadership.

The appellant's civilian trial defense counsel (CDC) did not move to suppress the appellant's statements to JY before entry of pleas as required by Rule for Courts-Martial 905(b)(3). Rule for Courts-Martial (R.C.M.) 905(b)(3), Manual for Courts-Martial (MCM), United States (2016 ed.). Instead, in part for tactical reasons, he elected to raise the motion to suppress during JY's testimony on the merits. The CDC argued that JY, as a retired Marine, was subject to the UCMJ and therefore was obligated to inform the appellant of her rights under Article 31, UCMJ, before she questioned the appellant about her visit to NCIS.

The military judge ruled that the CDC had waived the issue by failing to move to suppress the appellant's statements before entry of pleas. Further, the military judge found that JY was not acting in a disciplinary or law enforcement capacity, and that she therefore did not have an obligation to inform the appellant of her rights under Article 31, UCMJ. The military judge admitted JY's recounting of the appellant's statements into evidence.

The military judge convicted the appellant of wrongful use of cocaine. During sentencing, trial counsel presented the appellant's four prior nonjudicial punishments (NJPs) as evidence in aggravation. In its presentencing case, the defense presented testimony from the appellant's husband and the appellant made an unsworn statement. During both the appellant's unsworn statement and her husband's testimony, the appellant's sexual assault and her resulting PTSD, as well as her other physical injuries and conditions were presented to the court. The military judge sentenced the appellant to sixty days' confinement, reduction to E-1, and a bad-conduct discharge.

## II. DISCUSSION

### A. Article 31, UCMJ, rights

The appellant alleges that her statements to JY were not admissible because JY did not notify the appellant of her Article 31, UCMJ, rights before she asked her how she might have tested positive for cocaine. Additionally, the appellant alleges that the military judge abused his discretion when he found that the defense had not shown good cause why the objection to JY's testimony or a suppression motion concerning that statement were not raised prior to entry of pleas. The government, on the other hand, argues that the appellant's failure to object to JY's testimony or raise a motion to suppress the appellant's statements to JY prior to the entry of her pleas constitutes waiver. We agree with the government and find that the issue was waived. We also find that the military judge did not abuse his discretion by declining to grant relief from that waiver.

#### 1. Waiver

"Whether an accused has waived an issue is a question of law we review *de novo.*" *United States v. Ahern*, 76 M.J. 194, 197 (2017). "[W]aiver is the intentional relinquishment or abandonment of a known right. . . . When . . . an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *United States v. Gladue*, 67 M.J. 311, 311 (C.A.A.F. 2009) (quotation marks and citations omitted). If a valid waiver is made, it leaves this court no error to correct on appeal. *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F 2009) (citation omitted). However, unlike our superior court, this court is permitted under Article 66(c), UCMJ, to review issues affirmatively waived by an appellant at trial. *See United States v. Chin*, 75 M.J. 220, 230 (C.A.A.F. 2016) ("CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or correct the error.").

Military Rule of Evidence 304(f)(1) provides that any motion to suppress or objections to the confession or admission of an accused "must be made by the defense prior to" entry of pleas. Military Rule of Evidence (Mil. R. Evid.) 304(f)(1), Manual for Courts-Martial, United States (2016 ed.). Furthermore, Rule for Courts-Martial 905(e) provides that the failure of a party to raise a motion to suppress before entry of pleas constitutes waiver. R.C.M. 905(e).

The Court of Appeals for the Armed Forces (CAAF) has plainly held that Military Rule of Evidence 304(f)(1) "unambiguously provides that any claim arising under [Military Rule of Evidence 304] is waived absent an objection." *Ahern*, 76 M.J. at 197. Here, the appellant did not raise a motion to suppress her statements to JY or lodge an objection to JY testifying regarding those

statements until after her entry of pleas. As such, we find that there was waiver of this issue.

*2. Good cause shown?*

Although we find that waiver extinguished the appellant's ability to raise the issue on appeal of whether her statements to JY were admissible, we will still examine whether the military judge abused his discretion in finding that the CDC did not show good cause for his untimely motion and objection.

Despite the fact that the CDC failed to raise a motion to suppress the appellant's statements to JY or object to JY's testimony concerning those statements prior to entry of pleas, Military Rule of Evidence 304(f)(1) authorizes the military judge to permit such motions and objections to be made after entry of pleas provided the defense can show good cause for doing so. Mil. R. Evid. 304(f)(1). Rule for Courts-Martial 905(e) similarly permits the military judge to grant relief from such waiver for good cause shown. R.C.M. 905(e). In this case, the military judge considered whether the CDC had shown good cause for failing to raise the motion before entry of pleas and concluded that he had not.

We review the military judge's determination for an abuse of discretion. *United States v. Jameson*, 65 M.J. 160, 162 (C.A.A.F. 2007). We reverse for abuse of discretion if the military judge's findings of fact are clearly erroneous or if his or her decision is influenced by an erroneous view of the law. *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). We consider the evidence in light most favorable to the prevailing party—in in this case the government. *United States v. Macomber*, 67 M.J. 214, 219 (C.A.A.F. 2009).

Military courts have adopted the federal courts' determination that good cause does not exist when defense counsel knew or could have known about the evidence in question before the deadline to suppress or object. *Jameson*, 65 M.J. at 163. This includes instances where defense counsel had access to evidence and witnesses before trial, but failed to find out relevant information. *Id.*

We find that the military judge did not abuse his discretion. The record makes clear that JY's testimony should not have been a surprise. The defense counsel received JY's pretrial statement over a month before trial. Although JY's pretrial statement is not contained in the record, there is enough information in the record to indicate that defense counsel knew or could have known about JY's testimony. Defense counsel even interviewed JY a week before trial. During the interview JY told the CDC that "she wanted to tell

her side of the story."[1] Most importantly, the record makes clear that the CDC failed to timely move to suppress the statements in order to gain a tactical advantage over the government. As the CDC stated, he was "dealing with a young trial counsel who probably wants to have much if not all of the things worked out so he can . . . build his case off that."[2] The CDC further added that he "did not want [trial counsel] to basically know all of the different objections up front . . . ."[3] We find that the military judge did not abuse his discretion by finding that the CDC had not shown good cause to be granted relief from waiver. This assignment of error is without merit.

## B. Ineffective Assistance of Counsel

In her second assignment of error, the appellant alleges that she received ineffective assistance of counsel. She alleges two deficiencies: First, she alleges that her counsel were ineffective because they did not move to suppress the appellant's statements to JY before entry of pleas. Second, she alleges that her counsel failed to investigate or offer evidence of the appellant's PTSD. We find that the appellant's counsel were not ineffective.

We review allegations of ineffective assistance of counsel *de novo*. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012).

In assessing an appellant's claim that her counsel were ineffective, we apply the two-pronged test from *Strickland v. Washington*. 466 U.S. 668, 688, 694 (1984). In order to prevail, an appellant must show that (1) his or her counsel's performance fell below an objective standard of reasonableness, and (2) the counsel's deficient performance gives rise to a reasonable probability that the result of the proceeding would have been different without counsel's unprofessional errors. *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015). In considering counsel's tactical choices at trial, we afford counsel's decisions wide latitude. *Strickland*, 466 U.S. at 689. Our scrutiny of a trial defense counsel's performance is "highly deferential," and we make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time." *Id.*

### 1. Failure to suppress JY's testimony

The appellant claims that defense counsel were ineffective because they failed to timely object to JY's testimony, resulting in the admission of evidence that allegedly violated the appellant's Article 31(b), UCMJ, rights. We

---

[1] Record at 112.

[2] Record at 112.

[3] *Id.* at 113.

disagree. "When there is a claim of ineffective assistance of counsel premised on counsel's failure to make a motion to suppress evidence, an appellant must show there is a reasonable probability that such a motion would have been meritorious." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citing *United States v. Napoleon*, 46 M.J. 279, 284 (1997)).

The appellant is unable to do so here. The appellant could only have prevailed on a motion to suppress if JY, in her role as RCC, was required to notify the appellant of her Article 31, UCMJ, rights. Article 31(b), UCMJ, states that no person subject to the code may:

> interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

As recently explained by the CAAF in *United States v. Jones*, warnings are required when "(1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected." 73 M.J. 357, 361 (C.A.A.F. 2014).

We find that the appellant fails to demonstrate that JY satisfies the second prong of the *Jones* analysis. Under the second prong of the *Jones* analysis as explained by the CAAF in *United States v. Ramos*, rights warnings are required if the questioner is participating in an official law enforcement investigation or inquiry. 76 M.J. 372, 376 (C.A.A.F. 2017). Courts are to assess all the facts and circumstances at the time of the interview to determine, on a case-by-case basis, "whether the military questioner was acting or could reasonably be considered to be acting in an official law-enforcement or disciplinary capacity." *Id.* (quoting *Jones*, 73 M.J. at 361). Rights warnings are generally not required when the questioner is not acting in a law enforcement or disciplinary capacity, or during casual conversation. *United States v. Cohen*, 63 M.J. 45, 49-50 (C.A.A.F. 2006).

The CAAF has held that civilians working with the military could be considered to be acting in an official law-enforcement or disciplinary capacity. *See United States v. Brisbane*, 63 M.J. 106, 113 (C.A.A.F. 2006). In *United States v. Brisbane*, the CAAF held that a family advocacy treatment manager should have advised the accused of his Article 31, UCMJ, rights because the family advocacy treatment manager was directed by the command to determine whether there was enough information to continue with an investigation of the accused. *Id.* at 112. The CAAF noted that the family advocacy

treatment manager did not provide treatment to the accused, but only interacted with the accused in furtherance of a military investigation. *Id*.

We have also addressed the role of civilians in military investigations. In *United States v. Dyas*, we held that a Family Advocacy counselor was not required to provide Article 31, UCMJ, rights to a suspect because the counselor's primary objective was to "provide treatment and education." *United States v. Dyas*, NMCCA No. 201400250, 2015 CCA LEXIS 137, at *11 (N-M. Ct. Crim. App. 9 Apr. 2015) (unpub. op.). Although the counselor's testimony about her conversation with the accused provided incriminating evidence, we ruled that the counselor did not act in a "law enforcement function" because the counselor "waited to conduct her assessment [of the accused] until after the NCIS investigation was completed; that she did not give her notes or reports to law enforcement; and that [she] never 'threatened or promised [the accused] anything.'" *Id*.

We find that JY's primary role as a RCC was more analogous to the counselor in *Dyer* than the one in *Brisbane*. JY's role was to help the appellant's transition into retirement. Although JY regularly met with the battalion leadership team, there is no evidence that she coordinated with the command for any disciplinary purpose. Unlike *Brisbane*, in which a counselor conducted an interview in part to determine whether disciplinary action was warranted, no one in the appellant's command expressed any interest in using JY's meetings with the appellant to obtain incriminating evidence. Nor is there any evidence that JY herself was interested in creating incriminating evidence for use in a disciplinary proceeding.

Not only was JY not acting in a law enforcement or disciplinary capacity, the record reveals at least four reasons why a reasonable person in the appellant's position would not have considered JY to be acting in such a capacity. First, it was the appellant who initially brought up the topic of NCIS with JY. Second, it would have been unsurprising for anyone—especially someone not acting in an official capacity—to ask why the appellant had been to NCIS, or why the appellant might have tested positive for cocaine. Third, the appellant did not know JY in any capacity other than as her RCC. And fourth, JY was not in the appellant's chain of command.

Turning now to the second prong of the *Strickland* analysis, we find that even if it had been error to fail to timely raise the suppression motion, and even if that motion would have been successful, the failure to suppress JY's statements does not raise a reasonable probability that the findings would have been different. Admittedly, JY's testimony was somewhat helpful to the government because it presented the appellant's implausible and conflicting excuses for her urinalysis results. However, the appellant had also given at least one of these explanations (the lidocaine patch explanation) to her chain

of command independently of her conversation with JY. Moreover, JY's testimony also allowed the appellant to raise the possibility of innocent ingestion without testifying herself. The exclusion of JY's testimony, in our view, would not have changed the result of the court-martial. This assignment of error is without merit.

### 2. Failure to investigate or offer evidence of the appellant's PTSD

The appellant also argues her counsel were ineffective because they failed to investigate or present evidence of her PTSD and history of panic attacks. This failure, she argues, prejudiced her in both the trial on the merits and in sentencing. We disagree.

We granted the appellant's motion to attach some of her medical records and three declarations as evidence of her counsel's ineffectiveness. The appellant asserts in her declaration that she provided her counsel with the names of potential witnesses and that she told her counsel about her diagnosis of PTSD and its cause. The appellant claims that her counsel did nothing with this information. Additionally, the appellant provided two declarations in which the declarants attest that they observed the appellant to be affected by PTSD. One of the two declarants, a staff sergeant in the Marine Corps, added that in her experience members suffering from PTSD abuse substances in order to cope with trauma. Both declarants state that the appellant's counsel never contacted them, and that they would have served as a witness had they been asked.

The appellant claims that her counsel's failure to offer evidence of her PTSD to explain her medical emergency two days prior to her urinalysis prejudiced her at trial because such evidence could have provided an alternative medically documented explanation for why she required medical attention at a party. While at the party, the appellant had a medical emergency. Police and paramedics responded to the emergency. At trial, one of the responding police officers testified that the appellant was observed lying on a bedroom floor, awake but incoherent. The officer described the appellant as clenching her hands and hyperventilating, and opined that it appeared that the appellant was having a panic attack. The appellant, however, refused medical treatment. The appellant contends that the symptoms she exhibited as recounted by the responding police officer—lying on the ground awake but incoherent, rapid heavy breathing, clenching of the hands and tense muscles—are consistent with her PTSD symptoms. Without the military judge having the opportunity to consider that she suffered from PTSD or its physical symptoms, she claims the military judge wrongly attributed the symptoms she manifested during her medical emergency to cocaine use.

Even if the appellant's counsel were deficient for failing to offer evidence of her PTSD and its symptoms, we find that evidence of the appellant's PTSD

or its symptoms would not give rise to a reasonable probability that the results of the proceeding would have been different. Assuming *arguendo* that appellant's PTSD did cause her medical emergency, it did not cause her positive test for cocaine. The appellant admitted that she had attended a party at which cocaine had been present. She refused medical treatment from the emergency responders. She stalled when ordered to give a urine sample. She did not argue that the urinalysis was improperly conducted or contest the accuracy of its scientific findings. And she gave implausible explanations for her positive results. We find this allegation of ineffective assistance of counsel fails the second prong of *Strickland*.

Likewise, the appellant's claim that her counsel were ineffective for failing to produce evidence of the appellant's PTSD during sentencing is also without merit. The appellant's counsel did in fact present the appellant's PTSD (as well as other medical problems) to the court-martial, both through an unsworn statement and through the testimony of her husband. The appellant's counsel then argued these as matters in mitigation. We find that her counsels' choice to present these matters through the appellant's husband and through the appellant's unsworn statement was a reasonable tactical choice. Her counsel's failure to call the two declarants as witnesses was not so serious an omission that it violates *Strickland*'s highly deferential standard.

## C. Inappropriately Severe Sentence

In her third assignment of error, the appellant contends that the adjudged bad-conduct discharge is inappropriately severe in light of her status as a sexual assault victim who suffered from PTSD at the time of the offense. We disagree.

A military appellate court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ; 10 USC § 866(c). Sentence appropriateness involves the judicial function of assuring that justice is done and the accused gets the punishment she deserves. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988). This requires "individual consideration" of the particular accused "on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106-107 (1959)).

The appellant's short career in the Marine Corps was marred by four NJPs before she wrongfully used cocaine. Reviewing the nature and seriousness of the offense and the character of the offender—including the evidence of her mental and physical health challenges—we are satisfied that the appellant's sentence is appropriate.

## III. CONCLUSION

The findings and sentence are affirmed.

Judges CRISFIELD and HITESMAN concur.

FOR THE COURT

RODGER A. DREW, JR.
Clerk of Court