*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

**UNITED STATES**
Appellee

**v.**

**Koda M. HARPOLE, Seaman**
United States Coast Guard, Appellant

**No. 17-0171**
Crim. App. No. 1420

Argued December 6, 2017—Decided February 14, 2018

Military Judge: Christine N. Cutter

For Appellant: *Lieutenant Commander Jason W. Roberts* (argued); *James S. Trieschmann*, Esq. (on brief).

For Appellee: *Lieutenant Connor B. Simpson* (argued); *Stephen P. McCleary*, Esq. (on brief).

Judge OHLSON delivered the opinion of the Court, in which Judges RYAN and SPARKS, and Senior Judge EFFRON, joined. Chief Judge STUCKY filed a separate dissenting opinion.

————————

Judge OHLSON delivered the opinion of the Court.

Contrary to his pleas, a general court-martial with enlisted representation convicted Appellant of one specification of making a false official statement, two specifications of sexual assault,[1] and one specification of housebreaking, in violation of Articles 107, 120, and 130, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920, 930 (2012). Appellant's adjudged and approved sentence consisted of a dishonorable discharge, confinement for seven years, and a reduction in rank to E-1. The United States Coast Guard Court of Criminal Appeals (CCA) affirmed the findings and sentence.

We granted review of the following three issues:

_____

[1] Following findings, the military judge conditionally dismissed one sexual assault specification "subject to final review of" Appellant's case because the alternative sexual assault specifications were charged for "contingencies of proof."

 I. Whether the military judge abused her discretion when she allowed a victim advocate to testify as to Appellant's privileged communications, in violation of M.R.E. 514.

 II. Whether the trial defense counsel were ineffective by failing to suppress Appellant's unwarned admissions. These admissions were made to YN1 Nipp when she knew he was a suspect and under investigation. She intended to report these admissions to the command and questioned him without advising him of his Art. 31, UCMJ, rights.

 III. Upon request by the defense counsel and using a defense-drafted instruction, should the military judge have provided the members with an explanation of the term "incapable"?

*United States v. Harpole*, 76 M.J. 334 (C.A.A.F. 2017) (order granting review).

Because our decision in *United States v. Bailey*, 77 M.J. 11 (C.A.A.F. 2017), forecloses providing Appellant with any relief on Issue III, we only address the first two issues in this opinion.[2] As for Issue I, we conclude that based on the record before us, Appellant's communication to the victim advocate was not a "confidential" communication as required under the provisions of Military Rule of Evidence (M.R.E.) 514(a) and thus was not privileged. As for Issue II, we conclude that a factfinding hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), is necessary because the record fails to reflect why trial defense counsel did not seek to have Appellant's statements to the victim advocate suppressed pursuant to the provisions of Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012). Accordingly, although we find no error with respect to Issues

---

 [2] Just as in *Bailey*, the defense-requested instruction in this case was an erroneous statement of the law. 77 M.J. at 14–15. Indeed, it was precisely the same instruction. *See id.* at 13. Also as in *Bailey*, the military judge in Appellant's case properly defined "consent" in the panel instructions and this definition, combined with the plain meaning of "incapable," "allowed the panel to understand the element 'incapable of consenting.'" *Id.* at 15. We therefore conclude that the military judge did not err by failing to define "incapable of consenting."

I and III, we set aside the decision of the CCA and remand for a *DuBay* hearing to resolve Issue II.

## I. Background

### A. Summary of Testimony

In late February 2014, a Coast Guard icebreaker ship, the USCGC Polar Star, made a port call in Tahiti. Appellant's convictions stem from a sexual encounter with Storekeeper Third Class (SK3) GR during this port call. On the early morning of February 27, 2014, Appellant entered SK3 GR's berthing area aboard the ship. Those present in this berthing area provided three varying accounts of the sexual encounter, each of which is outlined below.

(1) SK3 GR's two roommates described hearing sounds of consensual sexual activity in their berthing area on the night in question. One roommate awoke to Appellant opening the curtain of her rack, looking for SK3 GR, and asking about a backpack. When this roommate pointed Appellant to SK3 GR's rack, the roommate watched Appellant shake SK3 GR awake and talk with her before the roommate fell asleep. This roommate was later reawakened by sounds of sexual activity in which a female voice was saying, "[Y]es, yes, yes." SK3 GR's other roommate and bunkmate woke up to her rack shaking and hearing sounds of what she believed to be consensual sex—moaning, groaning, and kissing—coming from SK3 GR's rack.

(2) SK3 GR described having several alcoholic beverages throughout the day and evening in Tahiti before returning to the ship. Upon waking the next morning, SK3 GR was surprised to find herself naked. She did not know what had happened the night before, but she initially thought she might have engaged in sexual intercourse with her ex-boyfriend before realizing that it was with Appellant.[3] Later

---

[3] At trial, SH3 GR testified as follows:

> I just have like a few flashes. So the first flash that I have is seeing [Appellant's] face. And knowing that we were having sex, because I felt uncomfortable. Then the next thing I remember is him telling me to shush. And then after that I don't know . . . how much time passed. I remember feeling like he

that day, SK3 GR's roommates informed SK3 GR that "what happened last night was not acceptable." When SK3 GR told her roommates that she did not "know how it happened" that she ended up having sex with Appellant, her roommates told her, "[Y]ou have to report it." SK3 GR then reported the incident to the command.

(3) Three days after the incident, Appellant informed his friend, Seaman Boatswain's Mate (SNBM) SC, and a victim advocate, Yeoman First Class (YN1) Nipp, that *SK3 GR* had sexually assaulted *him*. Specifically, in the presence of SNBM SC, Appellant informed YN1 Nipp of the following: he and a group of individuals went out drinking at a number of bars in Tahiti; SK3 GR made sexual comments to him throughout the night; he gave his backpack to SK3 GR to take back to the ship; he went to SK3 GR's berthing area to retrieve the backpack; he knocked on the door to the berthing area and SK3 GR answered; and he did not remember anything after that point. Appellant also told YN1 Nipp that he knew he had been sexually assaulted on the night in question because he felt the same as he had in the past when he had been sexually assaulted.[4]

At the time Appellant made this report, YN1 Nipp was aware of SK3 GR's sexual assault allegations against Appellant. Because Appellant's report was unrestricted, YN1 Nipp communicated his allegation up the chain of command.[5] She later also provided the United States Coast Guard Investigative Service (CGIS) with a detailed written statement about Appellant's communication to her.

### B. Motion In Limine

Before trial, defense counsel filed a motion in limine to preclude YN1 Nipp from testifying about Appellant's

---

was leaving, the weight of his body coming off of mine. And him leaving. And that's all I remember until the next morning.

[4] Appellant provided no details about any prior incidents when he was sexually assaulted.

[5] YN1 Nipp subsequently recused herself from Appellant's complaint because of a conflict of interest stemming from her prior knowledge of SK3 GR's allegations.

statements to her. Appellant argued that this communication was privileged under the M.R.E. 514 victim advocate-victim privilege.[6]

The military judge made the following findings of fact before resolving the defense motion: A few days after the incident in SK3 GR's berthing area, Appellant approached his friend, SNBM SC, and informed SNBM SC that he believed "he was taken advantage of" by SK3 GR after entering her berthing area. Following the conversation with SNBM SC, Appellant went to the victim advocate, YN1 Nipp. Appellant asked SNBM SC to "sit in on the interview for support," and he informed the victim advocate that "he had already told SNBM [SC] everything." YN1 Nipp notified Appellant that his report was unrestricted because he had already spoken with SNBM SC about the incident and that she would have to tell the command. Appellant then provided YN1 Nipp with a similar account as the one he told to SNBM SC. The military judge then concluded that the M.R.E. 514 privilege did not apply because Appellant's communication with YN1 Nipp was made in the presence of a third party—SNBM SC—and therefore was not confidential. Accordingly, the military judge denied the defense motion in limine.

## II. Analysis

### A. M.R.E. 514 Privilege

In analyzing this case, we first address whether Appellant's communication with the victim advocate was privileged under the M.R.E. 514 victim advocate-victim privilege.

### 1. Applicable Law

The question of whether a communication is privileged is a mixed question of fact and law. Factual findings are reviewed for clear error and legal questions, including the interpretation of a rule's language, are reviewed de novo. *United States v. Shelton*, 64 M.J. 32, 37 (C.A.A.F. 2006) (citing *United States v. McCollum*, 58 M.J. 323, 336 (C.A.A.F. 2003)); *see also McCollum*, 58 M.J. at 340.

---

[6] Trial defense counsel did not alternatively move to suppress Appellant's statement pursuant to the provisions of Article 31(b), UCMJ.

The military's victim advocate-victim privilege provides:

> A victim has a privilege to refuse to disclose and to prevent any other person from disclosing *a confidential communication* made between the alleged victim and a victim advocate, in a case arising under the [UCMJ], if such communication was made for the purpose of facilitating advice or supportive assistance to the alleged victim.

M.R.E. 514(a) (emphasis added).[7] Thus, a communication must be confidential to be privileged. *See* M.R.E. 514(a), (b)(3).

> A communication is "confidential" if made in the course of the victim advocate—victim relationship and not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of advice or assistance to the alleged victim or those reasonably necessary for such transmission of the communication.

M.R.E. 514(b)(3) (emphasis added). The party claiming the privilege has the burden of establishing by a preponderance of the evidence that the communication is privileged. *United States v. Durbin*, 68 M.J. 271, 273 (C.A.A.F. 2010) (citing *McCollum*, 58 M.J. at 336).

We use principles of statutory construction when interpreting M.R.E. privileges. *See United States v. Matthews*, 68 M.J. 29, 36 (C.A.A.F. 2009). These privileges are construed narrowly because they "'run contrary to a court's truth-seeking function.'" *United States v. Jasper*, 72 M.J. 276, 280 (C.A.A.F. 2013) (quoting *United States v. Custis*, 65 M.J. 366, 369 (C.A.A.F. 2007)).

Finally, "[w]e have held, in harmony with federal civilian law, that communications made in the presence of third parties, or revealed to third parties, are not [generally] privileged." *United States v. McElhaney*, 54 M.J. 120, 131–32 (C.A.A.F. 2000); *cf.* Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges*

---

[7] Citations to the M.R.E. are to the rules in effect at the time of Appellant's 2014 trial. The 2015 amendment to M.R.E. 514 expanded the privilege to communications with Department of Defense Safe Helpline staff. *See* Exec. Order No. 13,696, 3 C.F.R. 300, 300–41 (2015).

§ 6.8.1 (3d ed. 2016) (noting that the "presence of a third party during a face-to-face consultation usually negates the confidentiality necessary for a privilege"). In other M.R.E. privilege contexts, we have declined to "define the precise parameters of preserving … privileged communication made in the presence of third parties," but we have recognized that a privilege still exists if "there is a 'relationship by blood or marriage' as well as a 'commonality of interest' between the accused and the third party." *Shelton*, 64 M.J. at 39 (quoting *In re Grand Jury Investigation*, 918 F.2d 374, 385–88 (3d Cir. 1990)).

## 2. Discussion

Based on the record before us, Appellant has not met his burden of establishing that his statements to YN1 Nipp were confidential. Two key factors cause us to reach this conclusion. First, a third party, SNBM SC, was present during this communication and the record indicates that SNBM SC did not have any special relationship with Appellant. Rather, SNBM SC was simply Appellant's shipmate and friend and attended the victim advocate interview "for support." The mere provision of moral support is not enough to maintain the confidentiality of a statement. *Cf. Shelton*, 64 M.J. at 39; *United States v. Evans*, 113 F.3d 1457, 1464–65 (7th Cir. 1997) (holding that meeting with attorney was not privileged where third party attended the meeting as a friend, supporter and character witness).[8]

Second, the record does not support the contention that SNBM SC's presence at the meeting with YN1 Nipp was "in furtherance of the rendition of advice or assistance" pursuant to the provisions of M.R.E. 514(b)(3). The plain meaning of this phrase requires the communication to the third per-

---

[8] *See also* Imwinkelried, *The New Wigmore* § 6.8.1 (noting that "many courts still apply the traditional view" that the presence of a third party, such as a parent, friend or business associate, for support negates confidentiality for "professional privileges such as attorney-client and clergy-penitent" and that the "growing minority of jurisdictions … adopt[ing] the view that the presence of these supportive individuals is consistent with confidentiality" have done so "at least when there is a close family relationship and a need for the moral support" (footnotes omitted)).

son to be for the purpose of facilitating the *victim advocate* in providing advice or assistance to the victim. At no time did YN1 Nipp express any need for SNBM SC's presence during her meeting with Appellant. Therefore, Appellant's communication with YN1 Nipp was not confidential as required under M.R.E. 514(a). Accordingly, the military judge properly concluded that the M.R.E. 514 victim advocate-victim privilege did not apply to Appellant's communication with YN1 Nipp.

## B. Ineffective Assistance of Counsel

We next address Issue II wherein Appellant claims that trial defense counsel provided ineffective assistance by failing to seek suppression of his statement to the victim advocate under Article 31(b), UCMJ.

### 1. Applicable Law

"This court reviews claims of ineffective assistance of counsel de novo …." *United States v. Captain*, 75 M.J. 99, 102 (C.A.A.F. 2016). An appellant will prevail on an ineffective assistance of counsel claim if he "demonstrate[s] both '(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice.'" *Id.* at 101 (quoting *United States v. McIntosh*, 74 M.J. 294, 295 (C.A.A.F. 2015)). "'When a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious.'" *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (quoting *United States v. Napoleon*, 46 M.J. 279, 284 (C.A.A.F. 1997)). The appellant must also demonstrate "that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *United States v. Loving*, 41 M.J. 213, 244 (C.A.A.F. 1994) (internal punctuation omitted) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

### 2. Discussion

In assessing Appellant's ineffective assistance of counsel claim, we first must examine whether he has carried his burden of showing that his counsel would have been successful if she had filed a timely motion seeking to exclude Appel-

lant's statement to the victim advocate under Article 31(b), UCMJ. *See United States v. Jameson*, 65 M.J. 160, 164 (C.A.A.F. 2007). Article 31(b), UCMJ, warnings are required when: "(1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected." *United States v. Jones*, 73 M.J. 357, 361 (C.A.A.F. 2014) (footnote omitted) (citation omitted).

The only Article 31(b), UCMJ, predicate in dispute in this case is whether the victim advocate interrogated or requested any statement from Appellant.[9] As part of our inquiry into this issue, we must determine whether the victim advocate was "participating in an official law enforcement or disciplinary investigation or inquiry, as opposed to having a personal motivation for the inquiry." *See Jones*, 73 M.J. at 361 (internal quotation marks omitted) (citation omitted).

The record reflects that at the time YN1 Nipp and Appellant met, YN1 Nipp knew that Appellant was suspected of a crime. And yet, she did not advise Appellant of his Article 31(b), UCMJ, rights. Instead, she posed two questions to Appellant: (1) Was it "okay that SNBM [SC] [was] in the room"? and (2) "[W]hat was going on"?

The first question is telling because it indicates YN1 Nipp suspected that Appellant's request to talk to her was based on her role as a victim advocate (as opposed to a casual encounter or a junior enlisted servicemember seeking direction from a noncommissioned officer on non-victim advocate matters). Further, Appellant's response to that question—stating that he wanted SNBM SC to attend the meeting and explaining that SC already knew "about everything"—was important because it revealed to YN1 Nipp that

---

[9] The other three Article 31(b), UCMJ, predicates were clearly met in this case: (1) the victim advocate, a member of the active duty Coast Guard, is a person subject to the UCMJ (*see* Article 2(a)(1), UCMJ, 10 U.S.C. § 802(a)(1) (2012)); (2) Appellant's statements to the victim advocate regarded the offenses of which Appellant was suspected—housebreaking and sexual assault; and (3) the victim advocate knew that Appellant was suspected of an offense when she talked with him.

her discussion with Appellant would be unrestricted. Such unrestricted reports of sexual assault must be sent up the chain of command and disclosed to law enforcement.

The second question posed by YN1 Nipp about "what was going on" demonstrates that she sought to elicit information from Appellant at a time when she knew he was suspected of sexually assaulting SK3 GR.[10] YN1 Nipp's question, and Appellant's response, resulted in YN1 Nipp reporting to the command and to CGIS potentially incriminating information from Appellant's own mouth. Therefore, YN1 Nipp's knowing gathering of information from a suspect—with the knowledge that this evidence would be supplied to senior commanders and law enforcement—raises a colorable claim that she engaged in her conversation with Appellant in dual roles: one as a victim advocate and the other as a person who was "participating in an official law enforcement or disciplinary investigation or inquiry." *Jones*, 73 M.J. at 361.

Thus, the facts of this case provided a reasonable basis for trial defense counsel to argue before the military judge that Appellant's statements to YN1 Nipp should have been suppressed pursuant to the provisions of Article 31(b), UCMJ. Indeed, on the face of the record, it is unclear why trial defense counsel did not pursue this issue at Appellant's court-martial. Counsel could have first argued that Appellant's statements were privileged and then, in the alternative, that Appellant's statements were inadmissible under Article 31, UCMJ.[11]

---

[10] This question, though casual in nature, could be construed as interrogation. *See* M.R.E. 305(b)(2) (defining "[i]nterrogation" as "any formal *or informal* questioning in which an incriminating response either is sought or *is a reasonable consequence of such questioning*" (emphasis added)); *cf. Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980).

[11] As demonstrated above, we disagree with the CCA's assertion that "[t]he theory that [YN1 Nipp] was acting as a Victim Advocate is factually inconsistent with the theory that [she] was required to give Appellant his Article 31(b) rights." *United States v. Harpole*, No. 1420, slip op. at 8 (C.G. Ct. Crim. App. Nov. 10, 2016). Moreover, we note that there is nothing improper or unusual about counsel presenting arguments in the alternative before a trial judge. Consequently, we do not agree with the CCA's con-

Finally, we recognize that trial defense counsel's performance is presumed to be competent. *See Morrison*, 477 U.S. at 384. However, this presumption may be rebutted "by showing specific errors that were unreasonable under prevailing professional norms." *McConnell*, 55 M.J. at 482. The record contains no affidavits explaining why trial defense counsel failed to seek suppression of Appellant's statements under Article 31, UCMJ. Thus, all we have before us is a record seemingly indicating that trial defense counsel failed to litigate a legitimate legal theory that could have substantially and positively affected her client's case. Under the specific circumstances of this case, we cannot discern any reasonable tactical explanation for trial defense counsel's failure to take this course of action, and we decline to engage in blind speculation on this point. This "insufficiency [in] the record calls for an explanation from the defense team." *See United States v. Boone*, 42 M.J. 308, 314 (C.A.A.F. 1995).

We therefore conclude that it is necessary to order a *DuBay* hearing in this matter to further develop the record regarding Appellant's ineffective assistance of counsel claim. Specifically, the *DuBay* military judge should make findings of fact and conclusions of law to address the following issues:

(1) whether legal and tactical considerations were involved in trial defense counsel's decision not to file a motion to suppress Appellant's statements pursuant to Article 31(b), UCMJ;

(2) whether trial defense counsel's failure to seek suppression of Appellant's communication with the victim advocate pursuant to Article 31(b), UCMJ, was a reasonable strategic decision;

(3) whether there is a reasonable probability that such a motion to suppress would have succeeded;

---

clusion that trial defense counsel was presented with a "dilemma," and that "defense counsel could reasonably have made the tactical decision to seek to suppress all of the statements to [YN1 Nipp] as confidential communications rather than simply seek to suppress some of his statements because [she] failed to provide Article 31(b) rights." *Id.* at 8–9.

(4) whether there is a reasonable probability that the members' findings would have been different had YN1 Nipp's testimony been suppressed.

The *DuBay* military judge also shall make detailed findings of fact regarding Appellant's interactions with YN1 Nipp, on the date in question, as well as any other related factual determinations he or she decides are necessary to develop the record.

## III. Decision

The decision of the United States Coast Guard Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Coast Guard for remand to an appropriate convening authority to order a hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967). After the conclusion of these proceedings, the record of trial and the military judge's findings of fact and conclusions of law shall be returned to the Court of Criminal Appeals for further review in accordance with Article 66, UCMJ, 10 U.S.C. § 866 (2012).

Chief Judge STUCKY, dissenting.

In the granted issues, Appellant asserts that his defense counsel provided ineffective assistance by failing to move to suppress statements Appellant made to a victim advocate, Yeoman (YN1) Nipp, in violation of Article 31(b), UCMJ, 10 U.S.C. § 831(b) (2012). I conclude that Appellant could not have prevailed on such a motion and, thus, there is no reason to order a hearing into the defense counsel's motivations for not filing it. As I would affirm the judgment of the United States Coast Guard Court of Criminal Appeals, I respectfully dissent.

To prevail on a claim of ineffective assistance of counsel, Appellant bears the burden of proving both that his counsel's performance was deficient and that the deficiency resulted in prejudice. *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

To overcome the presumption, an appellant must "show specific defects in counsel's performance that were 'unreasonable under prevailing professional norms.'" *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009) (quoting *United States v. Perez*, 64 M.J. 239, 243 (C.A.A.F. 2006)).

> Article 31(b) warnings are required when (1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected.
>
> … Under Article 31(b)'s second requirement, rights warnings are required if the person conducting the questioning is participating in an official law enforcement or disciplinary investigation or inquiry, as opposed to having a personal motivation for the inquiry. This is determined by assessing all the facts and circumstances at the time of the interview to determine whether the military questioner was acting or could reasonably be considered

> to be acting in an official law-enforcement or disciplinary capacity.

*United States v. Jones*, 73 M.J. 357, 361 (C.A.A.F. 2014) (footnotes omitted) (internal quotation marks omitted) (citations omitted). The President has defined the term "interrogation" as "any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning." Military Rule of Evidence 305(b)(2).

At 9:30 p.m., three days after he was alleged to have sexually assaulted a shipmate, Appellant went, of his own volition, with his friend Seaman Childers, to see a victim advocate, YN1 Nipp, in her berthing area. YN1 Nipp was asleep at the time and was awakened by knocking on the door. YN1 Nipp took Appellant and Seaman Childers to the first class lounge to talk. YN1 Nipp knew Appellant as they had stood watch together.

YN1 Nipp asked Appellant if he was comfortable with Seaman Childers being present. He said that he was and that he had told Seaman Childers everything he wanted to speak to her about. YN1 Nipp then asked Appellant "what was going on." Appellant told YN1 Nipp that he was having marital problems—that his spouse had cheated on him. He claimed to have been sexually abused in the past, knew what it felt like, and that is why he was talking to her. He told YN1 Nipp that on the night of the alleged sexual assault of which he had been accused, he had been drinking with the alleged victim and others, that he went to the alleged victim's berthing area to retrieve his backpack, that the alleged victim answered the door, and that, although he was not "super trashed," he blacked out and didn't remember anything thereafter until he woke up in his own berthing area.

Although YN1 Nipp knew that a sexual assault allegation had been lodged against Appellant, she was not the alleged victim's advocate, and there is no evidence that she was involved with either the alleged victim or investigating the alleged offense. Nor is there any evidence that, when Appellant approached her, YN1 Nipp knew he wanted to discuss that incident.

A reasonable person, under the circumstances, would not conclude that merely by asking "what was going on," and listening to Appellant's story, YN1 Nipp was interrogating him or that she was engaged in an official law enforcement or disciplinary investigation or inquiry. Thus, the defense counsel had no valid grounds on which to challenge the admissibility of Appellant's statements to YN1.

Therefore, the defense counsel's performance was not deficient, and a *DuBay* hearing to determine counsel's motivation in not moving to suppress Appellant's statements is unnecessary.