# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39308**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dustin C. POOLE**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 May 2019

————————————

*Military Judge:* Patricia A. Gruen.

*Approved sentence:* Dishonorable discharge, confinement for 43 months, reduction to E-1, and a reprimand. Sentence adjudged 21 April 2017 by GCM convened at Yokota Air Base, Japan.

*For Appellant:* Major Meghan R. Glines-Barney, USAF.

*For Appellee:* Colonel Julie L. Pitvorec, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before HUYGEN, MINK, and POSCH, *Appellate Military Judges.*

Judge MINK delivered the opinion of the court, in which Senior Judge HUYGEN joined. Judge POSCH filed a separate opinion concurring in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

MINK, Judge:

A general court-martial comprised of a military judge alone convicted Appellant, contrary to his pleas, of one specification of indecent visual recording

on divers occasions in violation of Article 120c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920c. The military judge sentenced Appellant to a dishonorable discharge, confinement for 43 months, reduction to the grade of E-1, and a reprimand. The convening authority approved the adjudged sentence but waived the mandatory forfeiture of pay and allowances for a period of no more than six months, Appellant's release from confinement, or Appellant's expiration of term of service, whichever was sooner, for the benefit of Appellant's spouse and dependent children.

Appellant raises three issues on appeal: (1) whether the military judge erred by denying Appellant's motion to suppress the evidence obtained from the 23 October 2016 search authorization, which lacked probable cause; (2) whether the military judge erred by denying Appellant's motion to suppress all statements made by Appellant on 23 October 2016 and any derivative evidence gathered as violative of Article 31, UCMJ, 10 U.S.C. § 831; and (3) whether the military judge erred by admitting into evidence without sufficient authentication Prosecution Exhibit 4,[1] a disc containing videos purportedly recorded by Appellant.[2] Appellant filed a supplemental assignment of error asserting unreasonable delay in the post-trial processing of his case. We find no prejudicial error and we affirm the findings and sentence.

## I. BACKGROUND

Appellant recorded 14 videos of his stepdaughter, TN, while she was naked in the bathroom of the family's residence on Yokota Air Base (AB), Japan, when TN was approximately 15 years old. Without TN's knowledge that he was doing so, Appellant recorded the videos on his cell phone from the hallway outside of the bathroom through slats in the bathroom door, which

---

[1] The disc identified as Prosecution Exhibit 4, containing 14 videos, had been placed in the original record of trial at the location designated for Prosecution Exhibit 12. Prosecution Exhibit 12, also a disc but containing still images from the 14 videos, had been placed in the record at the location designated for Prosecution Exhibit 4. Having reviewed the contents of both discs, we are satisfied that this was an administrative error and that we have reviewed the actual Prosecution Exhibit 4 to resolve this assignment of error.

[2] Numerous exhibits, portions of the trial transcript, and the portions of Appellant's brief addressing the first and third assignments of error were sealed. These portions of the record and brief remain sealed. Any discussion of sealed material in this opinion is limited to that which is necessary for our analysis. *See* Rule for Courts-Martial 1103A(b)(4).

was closed. On 23 October 2016, Appellant's wife, LP, contacted law enforcement officials at Yokota AB and reported having found a video of TN naked on Appellant's cell phone. Based on the information provided by LP, the Air Force Office of Special Investigations (AFOSI) initiated an investigation that led to the seizure of Appellant's cell phone and discovery of the 14 videos of TN. The videos constituted the primary evidence upon which Appellant was convicted.

## II. DISCUSSION

### A. Search Authorization

On appeal, as at trial, Appellant challenges the sufficiency of the search authorization issued by the military magistrate that led to the seizure of Appellant's cell phone. At trial, Appellant asserted that, based on the totality of the circumstances, the search authorization was not supported by probable cause. The military judge denied Appellant's motion to suppress the evidence from his cell phone and found that the search authorization was valid. The military judge further found that, even if the authorization was defective, the AFOSI agents who seized the cell phone had acted in "good faith." On appeal, Appellant argues that the military judge erred by finding probable cause existed to support the search authorization and that the good faith exception does not apply in this case. We disagree.

#### 1. Law

The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. amend. IV.

Searches conducted pursuant to either a warrant or an authorization based on probable cause are presumed reasonable. *United States v. Hoffmann*, 75 M.J. 120, 123–24 (C.A.A.F. 2016) (quoting *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014)).

We review a military judge's ruling on a motion to suppress for an abuse of discretion, viewing the evidence in the light most favorable to the prevailing party. *Id.* at 124 (citing *United States v. Keefauver*, 74 M.J. 230, 233

(C.A.A.F. 2015)). The military judge's findings of fact are reviewed for clear error while conclusions of law are reviewed *de novo*. *Id.*

When reviewing a military magistrate's issuance of a search authorization, we "do not review [the military magistrate's] probable cause determination de novo." *Id.* at 125. Instead, we examine whether a "magistrate had a substantial basis for concluding that probable cause existed." *United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009) (citing *United States v. Bethea*, 61 M.J. 184, 187 (C.A.A.F. 2005)). We give "great deference" to the magistrate's probable cause determination because of "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *United States v. Nieto,* 76 M.J. 101, 105 (C.A.A.F. 2017) (citation omitted). However, this deference is "not boundless," and a reviewing court may conclude that "the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances." *Id.* (citing *United States v. Leon*, 468 U.S. 897, 915 (1984)). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *see United States v. Gallo*, 55 M.J. 418, 424 (C.A.A.F. 2001). However, if a military magistrate has "a substantial basis to find probable cause, a military judge [does] not abuse his discretion in denying a motion to suppress." *United States v. Leedy*, 65 M.J. 208, 213 (C.A.A.F. 2007). A substantial basis exists "when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location." *Rogers*, 67 M.J. at 165 (citations omitted).

The United States Court of Appeals for the Armed Forces (CAAF) has addressed the issue of substantial basis for probable cause to search for and seize evidence stored on electronic media in several cases, including *Nieto*. In *Nieto*, the CAAF reviewed whether a search authorization for the appellant's computer was supported by probable cause based on the investigator's "generalized profile about how servicemembers 'normally' store images" on their computers. 76 M.J. at 107. The CAAF held that such information did not provide the military magistrate with a substantial basis to find probable cause existed that the appellant's computer would contain evidence of a crime when the appellant had used a cell phone to make an indecent visual recording. The CAAF found that the appellant's "cell phone, by itself, had the ability to serve as both the instrumentality of the crime and as a storage device for the fruit of that crime" and because the investigator's generalized profile was "technically outdated," there was insufficient information to link Appellant's computer to the suspected crime. *Id.*

Military Rule of Evidence 311[3] generally requires the exclusion of any evidence obtained as result of an unlawful search or seizure made by law enforcement. The good faith exception to this general rule of exclusion is contained in Mil. R. Evid. 311(c)(3). For the good faith exception to apply in a case where a search authorization is defective for some reason, the Government must establish that law enforcement's reliance on the defective authorization was objectively reasonable. *Hoffmann*, 75 M.J. at 127. The Government has the burden of establishing by a preponderance of the evidence the following: (1) the seizure resulted from a search authorization issued by a proper search authority, such as a magistrate; (2) the magistrate had a substantial basis for determining probable cause existed; and (3) law enforcement reasonably and in good faith relied on the authorization. Mil. R. Evid. 311(c)(3), 311(d)(5)(A); *Nieto*, 76 M.J. at 107; *see also United States v. Carter*, 54 M.J. 414, 420 (C.A.A.F. 2001) (citation omitted).

### 2. Additional Background

The military judge made extensive findings of fact, in writing, in her ruling on the motion to suppress. Those findings were not clearly erroneous and were supported by the evidence presented at trial, and we adopt them.

On 23 October 2016, Appellant's wife, LP, contacted law enforcement officials at Yokota AB. LP spoke with AFOSI Special Agent (SA) JH and told him that she believed Appellant possessed "child pornography." LP had moved with her two children, including TN, to the state of Washington, while Appellant remained at Yokota AB to await his separation from the Air Force in November 2016. LP told SA JH that, sometime in 2015, she was reviewing Appellant's cell phone, an Apple iPhone 5, when she found a video recording of TN naked, who was then 15 years old. LP stated that Appellant's iPhone 5 later broke, that she did not know where it was, and that Appellant was now using an Apple iPhone 6 Plus. LP further stated that, when she confronted Appellant about the video of TN, Appellant said something to the effect that "it was a one time thing." According to LP, TN had told LP that TN had heard some noise like a recording device when she was in the bathroom of their residence on Yokota AB, but did not specify a date when she heard such a noise. LP also told SA JH that she believed TN had been recorded as recently as the time shortly before 1 October 2016 when they left Japan.

Based on the information received from LP, SA JH contacted the military magistrate for authorization to search for cell phones or other electronic stor-

---

[3] All references in this opinion to the Rules for Courts-Martial and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.) (*MCM*).

age devices at Appellant's residence on Yokota AB. After consulting with a judge advocate who advised that probable cause existed, the military magistrate, knowing of iPhone and other Apple device capabilities to upload and download data from Apple's servers and thus share data among a user's Apple devices, via applications, such as iCloud Backup, concluded that there was probable cause to believe evidence of a crime would be found on Appellant's iPhones or other devices. The military magistrate then verbally authorized a search of Appellant's residence for any Apple brand electronic devices, including cell phones, tablets, and any external storage devices.

Later on that same day—23 October 2016—AFOSI agents executed the search authorization and seized Appellant's iPhone 6 Plus.

On 2 November 2016, SA JH received notice from Apple that Appellant's iCloud account did not utilize Backup or any similar service.

**3. Analysis**

Denying the motion to suppress, the military judge reviewed the information that AFOSI agents supplied to the magistrate. The military judge then concluded:

> These details provide not only a nexus between the alleged crime and the specific item(s) to be seized, but provide[d] a substantial basis for determining probable cause existed to believe that evidence of a crime would be found in the place specified to be searched and items to be seized if found. Specifically, [Appellant's] residence on Yokota AB and Apple iPhones 5 and/or 6-Plus.

Having reviewed the evidence available to the military judge, we find that the record also amply supports the military judge's conclusions of law, specifically, that there was a substantial basis that probable cause existed in this case. Contrary to Appellant's argument that the holding in *Nieto* compels a conclusion that there was no probable cause, we distinguish *Nieto* from Appellant's case. The information provided by LP indicated that a video of TN was on one of Appellant's iPhones, and the military magistrate applied his own knowledge to determine that the video could be found on Appellant's other Apple devices.

Further, the military judge found that, even if there was no probable cause to search for and seize Appellant's cell phone, the good faith exception applied because the AFOSI agents "reasonably and in good faith" relied on the military magistrate's search authorization. We agree.

The search authorization was issued by the military magistrate after an AFOSI agent provided information to justify the search and a judge advocate

advised that there was probable cause. AFOSI agents then relied on the search authorization to seize Appellant's iPhone. In doing so, the agents acted reasonably and in good faith.

We find that the military magistrate who issued the search authorization had a substantial basis to determine that probable cause existed to search Appellant's cell phone and that the good faith exception applied in this case even if the search authorization was defective. Thus, we conclude the military judge did not abuse her discretion by denying the motion to suppress the evidence obtained from Appellant's cell phone.

## B. Article 31, UCMJ, Rights Advisement

At trial, Appellant moved to suppress his statements and testimonial acts, along with any evidence derived therefrom, made at the time of the search on 23 October 2016 because the AFOSI agents executing the search authorization did not advise Appellant of his rights pursuant to Article 31(b), UCMJ. Specifically, Appellant moved to suppress his answer to the agent's question of whether he had a cell phone, his act of turning over his cell phone to the agents, and his act of inputting his passcode into the cell phone at the request of one of the agents, as well as the evidence obtained from the cell phone.

The military judge denied the motion to suppress, finding that the agents were not required to advise Appellant of his Article 31, UCMJ, rights under the circumstances and that the agents did not request or direct Appellant to unlock his password-protected cell phone. On appeal, Appellant claims that the military judge erred in admitting Appellant's statements and derivative evidence from the cell phone. He argues that the AFOSI agents asked Appellant questions that elicited self-incriminating statements about the location and ownership of the cell phone and also directed Appellant to unlock his cell phone, which he did, thereby providing self-incriminating evidence, all without first advising him of his Article 31(b), UCMJ, rights. We disagree that the military judge erred in denying Appellant's motion to suppress, and we conclude that, under the circumstances, the AFOSI agents were not required to advise Appellant of his rights under Article 31, UCMJ.

### 1. Law

We review a military judge's ruling on a motion to suppress for an abuse of discretion. *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014) (citation omitted). "When there is a motion to suppress a statement on the ground that rights' warnings were not given, we review the military judge's findings of fact on a clearly-erroneous standard, and we review the conclusions of law de novo." *Id*. (quoting *United States v. Swift,* 53 M.J. 439, 446 (C.A.A.F. 2000)). "The abuse of discretion standard is a strict one, calling for more than

a mere difference of opinion." *Id*. (quoting *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000)); *see also United States v. Flesher*, 73 M.J. 303 (C.A.A.F. 2014) (quoting *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008)) (an abuse of discretion occurs when a "military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.").

The CAAF has held that Article 31(b), UCMJ, requires a rights advisement if "(1) the person being interrogated is a suspect at the time of questioning, and (2) the person conducting the questioning is participating in an official law enforcement or disciplinary investigation or inquiry." *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000); *see also Jones*, 73 M.J. at 361. We examine the totality of the circumstances to evaluate this issue. *United States v. Ramos*, 76 M.J. 372, 376 (C.A.A.F. 2017).

Military Rule of Evidence 305(b)(2) defines "interrogation" as "any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning."

### 2. Additional Background

The military judge made extensive findings of fact in her written ruling on the motion to suppress. The military judge's findings of fact were not clearly erroneous and were supported by the evidence presented at trial, and we adopt them.

On 23 October 2016, AFOSI Special Agents DB, RR, and AH arrived at Appellant's residence on Yokota AB to execute the search authorization. Although SA JH, who had obtained the search authorization, was not with them, SA DB and SA RR knew that there was a search authorization and that they were searching for Apple iPhones. When Appellant answered the door, the agents identified themselves and told Appellant that they had verbal authorization to search his residence. SA DB and SA RR then accompanied Appellant inside the residence and an individual who was visiting Appellant was escorted outside. At that point, according to SA DB's testimony at the hearing on the motion to suppress, SA DB asked Appellant if he had a cell phone as Appellant was picking up his cell phone from a table. SA DB recalled that Appellant began pressing the touchscreen of the cell phone with his thumbs and SA DB could see photographs on the cell phone's touchscreen. SA DB then placed his hand over the screen and asked Appellant to give the cell phone to him and Appellant complied.

SA RR testified that when SA DB asked Appellant if he had a cell phone, Appellant then walked over and picked up his cell phone from the table and began pressing on the touchscreen with both of his thumbs. SA RR said that

SA DB then placed his hand over the screen of the phone and asked Appellant to give him the cell phone and Appellant complied.

Both SA DB and SA RR stated that they did not advise Appellant of his rights pursuant to Article 31(b), UCMJ, prior to SA DB asking Appellant if he had a cell phone. Both agents also testified that neither of them asked Appellant for his passcode to unlock the cell phone or asked Appellant to unlock the cell phone, but that the cell phone was unlocked when Appellant handed the phone to SA DB. Once Appellant handed the unlocked cell phone to SA DB, SA DB gave the cell phone to SA RR, who then placed the cell phone in "Airplane Mode" to cut off any Internet connection and disabled the auto-lock feature. AFOSI agents later extracted from Appellant's cell phone the 14 videos of TN used to prove the offense.

Appellant, who testified for the limited purpose of the motion to suppress, stated that one of the agents asked if he had a cell phone and Appellant replied that he did. Appellant then walked over and picked up his cell phone from the table. As he was handing the cell phone to the agent, the agent asked Appellant if he could input the passcode for the device, and he said that he could. Appellant then entered the passcode. Appellant also testified that, after unlocking the phone, he began deleting certain photographs, including photographs of himself naked and of his wife that he did not want others to see.

Among the military judge's findings were that Appellant's testimony on the motion was not credible and the testimony of the AFOSI agents was credible.

### 3. Analysis

The fundamental question presented is whether the AFOSI agents were required to advise Appellant of his rights under Article 31(b), UCMJ, prior to asking him if he had a cell phone. It is undisputed that the AFOSI agents did not advise Appellant of his Article 31(b), UCMJ, rights prior to asking Appellant if he had a phone. As the military judge pointed out in her written ruling on the motion:

> While the version of events provided by SA [DB] and SA [RR] vary in small details, they are mostly consistent and credible and corroborate each other's versions of events. Both agents testified that they did not read Article 31 rights because they had no intention of interviewing the [Appellant]. In other words, they were not there to interrogate or request any statement regarding any specific alleged offense.

The question SA DB asked Appellant—do you have a cell phone?—was designed to assist in the execution of the search warrant and not to elicit an

incriminating response. We find the rationale of our sister service court applicable in this case that certain preliminary questions to assist in the execution of a search authorization do not require rights advisement where the questions were "mere preliminary vocal aids to the ongoing legal search." *United States v. Bradley*, 50 C.M.R. 608, 621 (N.C.M.R. 1975) (finding that no Article 31, UCMJ, rights warning was required before law enforcement asked a sailor subject to a lawful search if he had any money and then directed him to take the money out of his wallet and count it). *See also United States v. Neely*, 47 C.M.R. 780, 782 (A.F.C.M.R. 1973) (where an airman was advised of his rights and invoked his right to counsel, after which law enforcement agents executing a search authorization asked him for his locker key and to identify his locker, the court found that the identification "was only preliminary assistance in the search, which defined and limited its area, and which could have been readily defined and localized without his assistance. . . . [The identification] was not within the protection of Article 31 . . . ."). We determine the question—do you have a cell phone?—was such a preliminary, administrative question designed to aid in the execution of a valid search authorization and no rights advisement was required.[4]

Not only was the question—do you have a cell phone?—not designed to elicit an incriminating response, but Appellant's response indicating that he had a cell phone was not itself incriminating. In fact, the agents already knew that Appellant had a cell phone from the information provided by LP, but they did not know whether the cell phone was located on Appellant's person or somewhere in Appellant's residence. Appellant's response merely assisted the AFOSI agents in locating the cell phone for which they had a valid search authorization. Additionally, the location of Appellant's cell phone would have been readily established during the authorized search of Appellant's residence. The cell phone was lying in plain view on a table in the room where Appellant and the agents were standing. Additionally, because Appel-

---

[4] The present case is distinguishable from *United States v. Mitchell*, 76 M.J. 413 (C.A.A.F. 2017), in which the CAAF affirmed the lower court's suppression of the contents of the appellant's cell phone. In *Mitchell*, the appellant's cell phone had been seized pursuant to a valid search authorization. However, *after* being advised of his rights, the appellant, who was being subjected to custodial interrogation, invoked his right to counsel. Law enforcement officials then asked the appellant to input his passcode to unlock his cell phone. The CAAF concluded that asking the appellant to input his passcode after he had invoked his right to counsel violated his Fifth Amendment right to counsel and necessitated suppression of the contents of the cell phone but not the cell phone itself. Appellant's case did not involve custodial interrogation or the invocation of rights.

lant was the only person then residing in the residence, Appellant's ownership of the cell phone could have been easily established.

The more significant issue for Appellant stems from the access to the incriminating evidence on Appellant's cell phone that resulted from Appellant unlocking the phone before he handed it to SA DB. The military judge found, based on the evidence presented on the motion, that the cell phone was unlocked not as a result of SA DB asking Appellant whether he had a cell phone but instead as a result of Appellant's own decision to unlock the cell phone and start deleting pictures from it prior to handing it to SA DB. In ruling on the motion to suppress, the military judge made lengthy findings of fact and legal conclusions. Among those findings of fact was the determination that Appellant's testimony that he was asked to input the passcode was not credible and was contradicted by his own admission that he was attempting to delete embarrassing photographs prior to turning over his cell phone to the AFOSI agents. The record amply supports the military judge's factual findings regarding what the AFOSI agents did and did not ask Appellant before he unlocked his phone and gave it to them, and, again, we find no clear error with regard to those findings.

The record also supports the military judge's legal conclusion that the AFOSI agents executing the search authorization on 23 October 2016 were not required to render an Article 31(b), UCMJ, rights advisement to Appellant prior to asking him the preliminary question of whether he had a cell phone. As a result, the military judge did not abuse her discretion in denying the motion to suppress.

## C. Authentication of Video Evidence

Appellant next claims that the video evidence admitted by the military judge, specifically Prosecution Exhibit 4, did not satisfy the authentication requirement of Mil. R. Evid. 901. Prosecution Exhibit 4 is a disc containing copies of the 14 videos of TN extracted from Appellant's cell phone. In particular, Appellant points to the fact that no witness "was able to testify that the recording[s are] authentic or correct; that no changes, additional [sic], or deletions were made to the recording[s]; the true location or [sic] the filming; the mindset of the individual portrayed on the video[s]; or was present at the time of the filming." We instead conclude that the military judge did not err by admitting Prosecution Exhibit 4.

### 1. Law

In order to preserve a claim of error resulting from a military judge's decision to admit evidence, Mil. R. Evid. 103(a)(1) generally requires a party to make a timely objection and state the specific ground for the objection unless it is apparent from the context. If the party fails to preserve such a claim, it is

forfeited and the ruling is reviewed for plain error. *United States v. Reynoso*, 66 M.J. 208, 210 (C.A.A.F. 2008) (citation omitted). By contrast, the ruling is reviewed for abuse of discretion if the party preserves the claim. *United States v. Lubich*, 72 M.J. 170, 173 (C.A.A.F. 2013) (citing *United States v. Freeman,* 65 M.J. 451, 453 (C.A.A.F. 2008)).

The requirement of authentication is satisfied by "evidence sufficient to support a finding that the item is what the proponent claims it is." Mil. R. Evid. 901(a). The proponent of evidence "needs only to make a prima facie showing" for the item to be admitted as authenticated, and any "flaws in the authentication . . . go to the weight of the evidence instead of its admissibility." *Lubich*, 72 M.J. at 174 (citation omitted).

**2. Analysis**

At trial, the Defense objected to the admission of Prosecution Exhibit 4, claiming that statements made by TN and heard on the videos constituted inadmissible hearsay. After hearing the arguments of counsel, the military judge overruled the hearsay objection and admitted Prosecution Exhibit 4 as non-hearsay. At no time did the Defense claim at trial that the exhibit failed to satisfy the authentication requirement of Mil. R. Evid. 901. Because the Defense objected to the admission of Prosecution Exhibit 4 on the basis of hearsay, not authentication, and because authentication was not an apparent basis for the objection, we consider Appellant's instant claim forfeited. Accordingly, we review the military judge's ruling to admit Prosecution Exhibit 4 for plain error.

As noted above, the 14 videos contained on Prosecution Exhibit 4 constituted the primary evidence against Appellant. SA JH testified that he reviewed the data extracted from Appellant's cell phone, reviewed each of the videos in Prosecution Exhibit 4, and described them as a "fair and accurate depiction of the videos" found on Appellant's cell phone. He also testified that he was able to identify the naked female appearing in the videos as TN, the location depicted in the videos as the bathroom of Appellant's on-base residence, and the person recording the videos as at times wearing an Airman Battle Uniform and having a Celtic tattoo on his right hand that matched the tattoo on Appellant's right hand. That testimony satisfied the requirements of Mil. R. Evid. 901.

We conclude there was no error, much less plain error, in the military judge's ruling to admit Prosecution Exhibit 4. Even if we assume *arguendo* that Appellant's issue was preserved, we find no abuse of discretion in the military judge's decision to admit the exhibit, particularly in light of its relevance under Mil. R. Evid. 401 and significant probative value under Mil. R. Evid. 403.

**D. Timeliness of Appellate Review**

Lastly, Appellant asserts that the unreasonable post-trial delay from the date the case was first docketed with this court in August 2017 until the date of this opinion warrants relief. Appellant does not allege prejudice but avers that relief is warranted "[i]n light of the sheer length of time and the fact that Appellant is out of confinement." As a remedy, Appellant requests that we decline to affirm the dishonorable discharge. We deny Appellant's request.

**1. Law**

We review de novo whether an appellant has been denied the right to due process and a speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before the court. *Id.* at 142. When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). *Moreno* identified three types of cognizable prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* 138–39.

"We analyze each factor and make a determination as to whether that factor favors the Government or [Appellant]." *Id.* at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("[C]ourts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Moreno*, 63 M.J. at 136 (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

**2. Analysis**

Appellant's case was originally docketed with this court on 18 August 2017. The delay in rendering this decision after 18 February 2019 is presumptively unreasonable. However, we determine there has been no violation of Appellant's right to due process and a speedy post-trial review and appeal.

The court is affirming the findings and sentence in this case. Appellant, who is no longer in confinement, has not pointed to any prejudice resulting from the presumptively unreasonable delay, and we find none.

Finding no *Barker* prejudice, we also find the delay—contrary to Appellant's assertion—is not so egregious that it adversely affects the public's perception of the fairness and integrity of the military justice system. As a result, there is no due process violation. *See Toohey*, 63 M.J. at 362. In addition, we determine that, even in the absence of a due process violation, the delay does not merit relief. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that the time taken to review Appellant's case is not unreasonable and relief based on the delay is unwarranted.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.

POSCH, Judge (concurring in the result):

I concur with my esteemed colleagues that the military judge did not abuse her discretion in denying the motion to suppress the evidence obtained from Appellant's cell phone. However, I reach this conclusion on the basis of inevitable discovery and error that was harmless beyond a reasonable doubt because I find under the circumstances of this case that the AFOSI agents executing the search authorization for Appellant's cell phone were required to advise Appellant of Article 31(b), UCMJ, rights prior to asking him if he had a cell phone when they were inside his home to seize it.

As found by the military judge, a military magistrate provided verbal authorization to search Appellant's residence and seize his cell phone, which authorization AFOSI agents executed the same day. When they arrived, Appellant answered his door and the AFOSI agents followed Appellant into his home. One asked Appellant if he had a phone and Appellant replied, "Yes, over here," as Appellant walked to a table, picked up a phone, and eventually handed it to an agent.

I agree with the majority's deference to the military judge's finding that the AFOSI agents neither designed the question nor intended it to elicit an incriminating response by asking Appellant, "Do you have a cell phone?" I

nonetheless conclude that Appellant's response, "Yes, over here," was a natural and "reasonable consequence" of the agent's question, Mil. R. Evid. 305(b)(2), which necessitated a rights advisement under Article 31(b), UCMJ—a matter that was not addressed by the military judge in her ruling.[1]

The AFOSI agents in *Neely* were similarly executing a search authorization when they asked Airman Basic (AB) Neely for his locker key and then which locker, of three in the room, was his, and he complied by identifying the one at the foot of his bed. *Id.* at 781. In resolving the issue of AB Neely's statement made after he had been advised of his rights and invoked his right to counsel, the United States Air Force Court of Military Review (AFCMR) observed that, "[i]n cases where the suspect identifies and acknowledges ownership of a specific item which is the object of a search, the identification is a statement within Article 31, [UCMJ] . . . ." *Id.* at 782. But the court also recognized, "in cases where the accused does no more than render preliminary assistance in the search by defining and limiting its area, the same result does *not necessarily* follow." *Id.* (emphasis added). The court then reached the pragmatic conclusion that "the agents would *inevitably* arrive at [Neely's] locker, which was at the foot of his bed, *and discover what they did*," and also because "abundant evidence in the record [showed] the locker was the accused's, and the items therein not possessions of his roommate." *Id.* at 783 (emphasis added).

On the issue of inevitable discovery, the AFCMR concluded, "[u]nder these circumstances we find the accused's identification of the locker was only preliminary assistance in the search, *which defined and limited its area, and which could have been readily defined and localized without his assistance.* It was not within the protection of Article 31[, UCMJ,] or *Miranda-Tempia.*"[2] *Id.* at 782 (emphasis added) (footnote and citations omitted). However, as the AFCMR further commented, the locker was not the item for which the agents were searching.

Unlike *Neely*, the AFOSI agent's question prompted Appellant to identify and acknowledge ownership of the specific item that was the object of their search, i.e., his cell phone, and not merely define or limit the search area. *Id.*

---

[1] "Interrogation" means any formal or informal questioning in which an incriminating response either is sought or is a reasonable consequence of such questioning." Mil. R. Evid. 305(b)(2). The ruling addressed the former but made no finding as to the latter.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Tempia*, 37 C.M.R. 249 (C.M.A. 1967).

It follows that Appellant's affirmative response went beyond the preliminary assistance exception relied on in *Neely* and by my colleagues. Aside from the exception, the AFCMR relied on the principle of inevitable discovery to reach the result that AB Neely's affirmative identification of his locker sought by AFOSI agents with a valid warrant was not "within the protection" of Article 31, UCMJ. Likewise, I rely on Mil. R. Evid. 304(b) to conclude that Appellant's cell phone, and evidence obtained from it, was not derived from Appellant's affirmative response to the AFOSI agent's question whether Appellant had a cell phone or from Appellant's act of picking up his cell phone and eventually handing it to an agent. As in the case of the contents of AB Neely's locker, Appellant's cell phone and evidence obtained from it would have been inevitably obtained.

The military judge admitted evidence of Appellant's affirmative response that identified and acknowledged ownership of his cell phone, which I find was required to have been preceded by an Article 31(b), UCMJ, rights advisement. This was error, but harmless beyond a reasonable doubt. *United States v. Gardinier*, 67 M.J. 304, 306 (C.A.A.F. 2009); *United States v. Brisbane*, 63 M.J. 106, 116 (C.A.A.F. 2006) (reviewing Article 31(b), UCMJ, error under the standard of harmless beyond a reasonable doubt). Trial defense counsel plainly "concede[d] that the phone inevitably would have been discovered." I, too, find that discovery of the phone, and Appellant's ownership and connection to it, were inevitable. Accordingly, I find there was no reasonable possibility that Appellant's unwarned affirmative response might have contributed to the finding of guilty.

For these reasons, I conclude that Appellant was not prejudiced by the admission of Appellant's cell phone and his affirmative response that identified and acknowledged ownership of it. Therefore, I concur in the result determined by the majority.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court